102    505
104    453
102    505
e138  ¹230

·   JACOB HANSELMAN v. ANDREW J. DOVEL.

*Husband and wife—Competency as witnesses—Divorce—Adultery
—Order of proof.*

1. In a suit by a husband for debauching and carnally knowing his wife, and thereby alienating and destroying her affection for him, brought after he has secured a divorce from her, the husband is not a competent witness to testify to the charge of adultery.

2. The plaintiff sought to introduce in evidence an alleged conversation with the defendant, in which the matter of the frequency of the defendant's calls upon the plaintiff's wife was gone over, and in which he talked about said calls, and why they were made, and what he was doing there. It was admitted by plaintiff's counsel that he did not expect to show that any admission was made at the conversation of criminal intimacy between defendant and plaintiff's wife. The court sustained the objection of defendant's counsel to the introduction of the conversation, unless it was connected with something else to make it relevant. And it is held that the ruling simply went to the order of proof; that the offered testimony would not, standing alone, have been sufficient to warrant a verdict for the plaintiff; and that it cannot be said that the ruling was prejudicial.

Error to Manistee.  (McMahon, J.)  Argued October 26, 1894.  Decided November 20, 1894.

Case.  Plaintiff brings error.  Affirmed.  The facts are stated in the opinion.

*George L. Hilliker,* for appellant.

*A. V. McAlvay* and *Thomas Smurthwaite,* for defendant.

MONTGOMERY, J.  This is an action for criminal conversation.  Verdict for defendant.

1. On the trial the plaintiff called a witness, one J. M. Ramsdell, who testified that during 1893 he called upon

plaintiff and his wife at their rooms, and between January and August of that year saw defendant there as often as once a week; that he had a conversation with defendant in regard to his calls there, once; thinks it was in the spring or early summer. He was then asked the following question:

"State who began the conversation, and what was said.
"*Mr. McAlvay:* We object to it as immaterial and irrelevant, and ask what is sought to be shown by it.
"*Mr. Hilliker:* We seek to show simply this: That Mr. Dovel came to see Mr. Ramsdell because Mr. Ramsdell, as Mr. Dovel said, had talked with Mrs. Hanselman about the effect of his calls there, and Mr. Dovel came there, protesting as to Mr. Ramsdell's interference with his calls. They had a conversation there, in which the matter of the frequency of his calls was gone over, in which he talked about his calls there, and why he went there, and what he was doing there; and we seek to bring that out, and about these very calls he was making down at this house."

The court, after an examination of the declaration, said:

"The gist of the complaint, as I understand it, is a carnal knowledge and alienation through this, and not by other means. So I have some doubt about the relevancy of the testimony as to the frequency of the calls there, as to conversations at least, especially in advance of any evidence that frequent calls had been made. You did not expect to show, or have not offered to show, that there were any admissions made at this conversation of criminal intimacy.
"*Mr. Hilliker:* No, sir.
"*The Court:* I think I will sustain the objection to the introduction of the conversation at the present time, unless it is connected with something else to make it relevant."

The ruling simply related to the order of proof, and, as it is clear that the offered testimony would not, of itself, have been sufficient to entitle the plaintiff to claim a verdict from the jury, we think it cannot be said that the ruling was prejudicial. There was a plain intimation that, if the plaintiff were afterwards able to offer testimony

which tended to substantiate the main charge, the testimony here offered would be admitted. This the plaintiff appears to have been unable to do, unless it shall be held that the testimony of the plaintiff himself was competent.

2. This leads us to the consideration of the most important question presented, which is whether, after a divorce between the plaintiff and his wife, the husband is a competent witness to testify to the charge of adultery, in a suit brought against the alleged paramour of the wife.

3 How. Stat. § 7546, provides:

" A husband shall not be examined as a witness for or against his wife without her consent, nor a wife for or against her husband without his consent.    *    *    * Nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage; but, in any action or proceeding instituted by the husband or wife in consequence of adultery, the husband and wife shall not be competent to testify."

In *Mathews v. Yerex*, 48 Mich. 361, it was held that under this statute the wife is not a competent witness for the husband, in a suit brought by him for criminal conversation. The doctrine of this case was reaffirmed' in *Reynolds v. Schaffer*, 91 Mich. 494.

In *Carter v. Hill*, 81 Mich. 275, it was held that the husband is not a competent witness for himself in such a case. It was said by Mr. Justice CAHILL:

" This statute. was intended to subserve a wise public policy; and we think we ought to call attention to the flagrant violation of it in this case, even though no point be made upon it by counsel.    *    *    *    The clear purpose of the statute is to preserve with sacredness the confidences of the marriage state, and to render it impossible for either husband or wife to speculate upon the other's dishonor, relying upon their own testimony to make or support a case."

The question remains whether, after the termination of

the marriage relation, it is competent for the husband to testify to the alleged fact of adultery occurring during marriage. We are cited to no case in which such testimony has been held competent.

In the case of *People v. Marble*, 38 Mich. 117, the incompetency of such testimony is implied, rather than stated. In that case the witness was permitted to testify to transactions which did not consist of communications made during marriage, and it was said:

"Since the relation had ceased when he was called, and as the prosecution 'was not in consequence of adultery,' there was nothing to qualify his general competency, save the exception in the second of the above-named sections, providing that, without the consent of both, neither husband nor wife, during the marriage or afterwards, shall 'be examined as to any communication made by one to the other during the marriage.'"

In the case of *State v. Jolly*, 3 Dev. & B. (N. C.) 110, the question arose whether, at the common law, the divorced husband was a competent witness to testify against the paramour of the wife, and it was held that he was not. It was said in the course of the opinion:

"It is argued by the attorney general that the criminal conduct testified to in this case was itself an outrageous violation of the marriage vow,—a matter in respect to which confidence was not yielded by the wife, nor could have been asked by the husband. * * * We are not satisfied that the exception contended for is established by the reasoning urged in its support. The rule we deem a valuable one, and we view with apprehension any exception having a tendency, more or less direct, to promote cunning, or to generate distrust where the best interests of society require that perfect frankness and confidence ought to prevail. If one exception be sanctioned because, from the character of the criminal act imputed, the dissent of the witness from its commission must be presumed, others may follow where the like presumption will be entertained, although not perhaps with equal confidence, and there will be danger of our having no rule capable of general and steady application."

In *State v. Phelps*, 2 Tyler (Vt.), 374, it was held that a woman divorced *a vinculo* is not a competent witness upon an indictment against her former husband to prove his adultery. And in *Rea v. Tucker*, 51 Ill. 110, it was held that in an action for *crim. con.* a divorced wife is not a competent witness to testify in behalf of her former husband, and against her alleged seducer.

There are cases in which the husband, after the divorce of the wife, has been permitted to call her to prove her own infidelity. *Ratcliff v. Wales*, 1 Hill, 63; *Dickerman v. Graves*, 6 Cush. 308. But in each of these cases the holding was put upon the distinct ground that the wife was not called to testify *against* her husband, while in *Ratcliff v. Wales* it was distinctly intimated that she would not be competent to testify against him. It was said:

" For the purpose of promoting a perfect union of interests and securing mutual confidence between husband and wife, the courts have generally refused to admit the wife as a witness against the husband, even after the marriage contract was at an end, when she was called to speak of any matter which happened during the continuance of the marriage, and which might affect the husband either in his pecuniary interest or character."

In the present case the testimony of the husband would affect the character of the wife, is offered in an action instituted by him in consequence of adultery, and we think is within the prohibition of the statute.

The judgment will be affirmed, with costs.

McGRATH, C. J., LONG and HOOKER, JJ., concurred. GRANT, J., did not sit.