## THE PEOPLE v. FRED E. FOWLER.

*Criminal law—Jury—Qualifications—Adultery—Trial—Conduct of prosecuting attorney—Evidence.*

1. It is not reversible error to sustain improperly a challenge for cause interposed by the people to a juror in a criminal case, where it does not appear that the regular panel of jurors was exhausted, or that the people had exhausted their peremptory challenges, or that any objection was made by the respondent to the competency or impartiality of the jury which was obtained; citing *Mining Co. v. Johnston*, 23 Mich. 39; *Luebe v. Thorpe*, 94 Id. 268.

2. In a prosecution for adultery, the prosecuting attorney, in opening the case to the jury, stated that the people would show that, in the winter prior to the commission of the alleged offense, the respondent was found, by the husband of the woman with whom the adultery was alleged to have been committed, concealed behind the door of her sleeping room. No evidence was given on the trial in support of said statement. And it is held that if the statement was made in good faith, and on the trial the prosecuting attorney found that his proofs did not substantiate the statement, a conviction should not, for that reason alone, be set aside.

3. The husband was not a competent witness to testify to the truth of said statement; citing *Hanselman v. Dovel*, 102 Mich. 505.[1]

---

[1] As to competency of husband and wife as witnesses for or against each other in criminal cases, see *People v. Gordon*, 100 Mich. 518, and note.

104 MICH.— 29.

4. Evidence of conversations had with the wife, in the absence of
the respondent, was, as to him, hearsay, and not admissible.

5. Complaints made by a daughter of the wife that her school-
mates twitted her that the respondent was her brother's father
were incompetent, and the error committed in admitting them
was not cured by striking out the testimony.

6. It was competent for the people to show prior, but not subse-
quent, acts of intimacy between the parties.

7. The prosecuting attorney had no right to attempt to prejudice
the respondent by referring in his closing argument to the
fact that the wife had not been sworn as a witness in the case,
and the court should have directed the jury that they could
not weigh that fact against the respondent.

Exceptions before judgment from Hillsdale. (Lane, J.)
Argued February 28, 1895. Decided March 19, 1895.

Respondent was convicted of the crime of adultery.
Conviction reversed. The facts are stated in the opinion.

*F. A. Lyon,* for respondent.

*Fred A. Maynard,* Attorney General, and *Guy M. Chester,*
Prosecuting Attorney, for the people.

LONG, J. Respondent was convicted of adultery.

While the jury were being impaneled for the trial,
Samuel Woodruff was called, and testified on his *voir dire*
that if, upon the trial of the cause, he should find the
evidence equally balanced, he would render a verdict in
favor of the respondent, because, if there was any doubt
in his mind, he should think the respondent would be
entitled to the benefit of it. He also stated substantially
that he would naturally give the respondent the benefit of
the doubt. He was asked:

" Would you naturally be inclined to do this?
" *A.* Yes, sir.
" *Q.* Independent of any rule of law?
" *A.* Yes, independent."

The people thereupon challenged the juror for cause, and he was dismissed from the panel. Respondent insists (1) that no cause was shown which authorized his dismissal from the panel; (2) that respondent's rights were prejudiced by the action of the court.

If it be conceded that the ground of challenge was not sustained, yet it is evident that the respondent was prejudiced in no substantial right, inasmuch as it does not appear that the regular panel of jurors was exhausted, or that the people had exhausted their peremptory challenges, and no objection was made to the competency or impartiality of the jury which was obtained. *Atlas Mining Co. v. Johnston*, 23 Mich. 39; *Luebe v. Thorpe*, 94 Id. 268.

The theory of the prosecution was that on the 17th day of February, 1892, the respondent went to the house of the complainant, Mr. Peck, and there, in the absence of the husband, went into a sleeping room with Mrs. Peck, and they went to bed together, staying in bed from 9 o'clock in the morning until about noon. To prove this, the prosecution called Mr. Emmer K. Eastman, who was stopping at the house of Mr. Peck, who testified substantially that on the date in question he went over to a grocery store, about a mile and a half away, and on returning he found no one in the house below; that he went up stairs, and heard a rustling of bed clothes; that he entered the bedroom, the door of which was open, and he saw two forms in bed, covered up, the pillows in their proper place, and the bedclothes all nicely tucked in on both sides of the bed; that there were no signs of any one's being there, except the two forms in the bed, all covered up, and, if respondent was there, he was in bed, all covered up,—hat, boots, and all; that he went down stairs, took a newspaper, and sat down a short distance from the stair door, and stayed there until afternoon; that Mrs. Peck came down stairs, and requested witness to go down cellar and

get some pork; that, when he went down the cellar stairs, he heard two persons coming down the stairs above; that he hastened back up the cellar stairs, looked out of the cellar door, and saw Mrs. Peck and respondent coming out of the stairway.

On opening the case to the jury, the prosecuting attorney stated that the people would show that in the winter prior to the alleged act Mr. Peck had found the respondent concealed behind the door of his wife's sleeping room. No evidence was given on the trial to support this statement, and it is claimed that the statement was so prejudicial to the rights of the respondent that a new trial should be granted. If this were the only error in the record, we might hesitate to reverse the case on that ground. If this statement was made in good faith by the prosecuting officer, and on the trial he found that the proofs did not substantiate the statement, we do not think that, for that reason alone, the conviction should be reversed. The prosecuting attorney may not always find that the proofs will meet the case he expects to make when he makes his opening statement to the jury, and it is not every failure of proof, under such circumstances, that warrants a reversal. In this case the fact was not proved, and the jury must be presumed to have based their verdict upon the evidence, and not upon the statement of counsel. But, as the case must be reversed upon other grounds, we presume that on another trial there will be no complaint of like character, as the prosecuting officer's duty is to explain to the jury the nature and elements of the issue that they are to try, and not to make statements that will not be supported by the evidence. The prosecution claims that when the statement was made it was expected that proofs would be allowed to support the statement, and the husband of Mrs. Peck was called to prove the fact, but his testimony was excluded by the court.

It is contended by the people that the court was in error in excluding this testimony. The testimony was properly excluded. *Hanselman v. Dovel,* 102 Mich. 505, and cases there cited.

Testimony was admitted of certain conversations with Mrs. Peck in the absence of the respondent. This was error. As to respondent, it was clearly hearsay. *People v. Montague,* 71 Mich. 457; *Dalton v. Dregge,* 99 Id. 250; *Com. v. Thompson,* 99 Mass. 444.

Mattie Doolittle was called as a witness by the prosecution, and testified that she was teaching school only a few rods from the respondent's house, and that she had seen respondent go to and from the Peck house several times a day during that winter. On cross-examination, respondent's counsel asked: "How did it happen that your eyes were on Fred Fowler, instead of your school?" to which she replied: "The scholars a great many times had twitted Julia Peck [the daughter of Mrs. Peck] of Fred Fowler's going there." On redirect examination the prosecutor asked: "State what the fact was as to how she [Julia Peck] came to you; what her appearance was, and what she said about this." Under objection, the witness answered: "She was crying, and complained that the scholars were telling her that Fred Fowler was Zerilla's [a brother of Julia] father, and that Rodney Fowler was her father." This testimony was subsequently stricken out, but the error was in admitting it. It had a tendency injuriously and seriously to affect the rights of the respondent. It had no place in the case, and it cannot be said, under the circumstances, that the error was cured in striking it out. *People v. Pinkerton,* 79 Mich. 110.

Testimony was admitted tending to show a similar offense on May 6, 1892. This was some three months after the offense charged in the information. The court was in error in admitting this testimony. Acts of intimacy in this

class of cases prior to the offense charged may be shown, but it is wholly incompetent to show subsequent acts for any purpose. *People v. Clark*, 33 Mich. 112; *People v. Etter*, 81 Id. 571; *People v. Hubbard*, 92 Id. 326.

In the closing argument to the jury the prosecuting attorney referred to the fact that Mrs. Peck had not been sworn in the case. This was objected to, and the prosecuting attorney said:

" Well, let Brother Lyon comment upon Mrs. Peck. When he wants to talk, it is all right for her to be in the case."

This language was entirely uncalled for. The prosecutor had no right thus to attempt to prejudice the respondent, and the trial court should not have permitted these remarks, and, if made, should have directed the jury that they could not weigh that fact against the respondent. *People v. Hendrickson*, 53 Mich. 525.

The principal errors complained of have been discussed. We need not refer to the others, of minor importance, as upon a retrial they will undoubtedly be corrected.

The conviction must be reversed, and a new trial ordered.

McGRATH, C. J., MONTGOMERY and HOOKER, JJ., concurred. GRANT, J., did not sit.