## PEOPLE *v.* UPTON.

1. ASSAULT AND BATTERY—EJECTION OF A TRESPASSER—HUSBAND
   AND WIFE — DOMINION OF HUSBAND OVER WIFE'S HOMESTEAD.
   In a prosecution for assault and battery committed upon prem-
   ises belonging to a married woman whose husband was
   shown to have left her with the alleged intention of remain-
   ing away, but, returning, found respondent's wife on the
   premises where she had been invited by the owner, and, after
   ordering her off, attempted to lead her from the premises,
   when her husband, the respondent, interfered, and, being also
   ordered off, engaged in an encounter with the husband of
   such owner; and, upon evidence disputing respondent's claim
   that the husband had abandoned his wife, respondent was
   entitled to have submitted to the jury the question of aban-
   donment and the issue as to which party was the aggressor.

2. SAME.
   If respondent was on the premises at the invitation of the
   owner, wife of the complaining witness, he was not a tres-
   passer; whether he was bound to leave at the demand of
   complaining witness depends on the determination of the
   question whether or not the witness had in fact abandoned
   dominion over the wife's dwelling.

3. WITNESSES—MARITAL RELATIONS—COMPETENCY OF HUSBAND.
   Under section 10213, 3 Comp. Laws, providing that the wife
   shall not be examined as a witness against her husband with-
   out his consent, etc., the wife was a competent witness con-
   cerning an affray in which respondent assaulted her husband,
   though her testimony might tend to charge her husband
   with a crime.

4. SAME—PROSECUTION'S DUTY TO CALL EYEWITNESS.
   The prosecution, at respondent's request, should have been re-
   quired to call the wife as a witness.

Exceptions before sentence from Mecosta; Cogger, J.
Submitted January 18, 1912. (Docket No. 129.) De-
cided March 12, 1912.

George Upton was convicted of assault and battery.
Reversed.

*Franz C. Kuhn*, Attorney General, and *Arthur J. Butler*, Prosecuting Attorney, for the people.

*Hatch, McAllister & Raymond*, for respondent.

OSTRANDER, J.   Respondent was convicted of an assault and battery committed July 28, 1911, upon one Richard E. Oxford.   It is the theory of the prosecution, supported by testimony, that Oxford ordered the wife of respondent to leave certain premises where he found her talking with his (Oxford's) wife and to go home; that she refused to do so, and he took her by the arm in an attempt to lead or push her from the premises; that she resisted and finally sat down on a lilac bush, and as a result her sleeve, and perhaps some other of her apparel, was torn and her arm was bruised.   Oxford then went into the dwelling house upon the said premises, and shortly thereafter the respondent appeared upon the scene and the premises, and Oxford, coming out upon the porch of the house, was asked by respondent what he had been doing and what he meant by having rows with women and by abusing his (respondent's) wife and calling her names, or words to that effect. Respondent was ordered by Oxford to leave the premises. Instead of doing so, he walked to the porch upon which. Oxford was standing, Oxford put his hand on respondent's shoulder, respondent put his foot on the lower step, caught hold of and struck Oxford, and in the mêlée that ensued Oxford was struck several times by respondent.

It is the theory of the defendant, supported by testimony, that the title to the premises in question was in Mrs. Oxford; that both Mrs. Upton and her husband, the respondent, were upon the premises by the invitation and with the consent of Mrs. Oxford.   It is their contention, further, that neither Mrs. Upton nor her husband, the respondent, were under any obligations to obey the request or demand of Oxford that they leave the premises, they not being trespassers there, and that he had no right or authority to enforce his request or demand by putting either of them off of the premises.   In accordance with this theory,

they offered testimony tending to prove that some trouble existed between Oxford and his wife; that for two weeks he had not been at home; that before his last departure he had stated to others that he was through there and did not propose to live there any more, had told certain dealers in groceries and other household supplies not to furnish any more supplies to the house except upon his written order, had left his family destitute of money and other means of support, and had otherwise signified by his conduct and behavior that he had abandoned the premises. The people were permitted, over objection, to prove that Oxford had made considerable improvements upon the said premises so belonging to his wife while she owned the title. The court instructed the jury that, under the undisputed evidence, Oxford had a lawful right on the premises and the right to eject respondent therefrom. The court was requested to charge the jury:

" (5) It is the claim of the prosecution in this case that the defendant, George Upton, was a trespasser upon the premises where the assault is alleged to have taken place. Defendant claims that he was on the premises at the invitation of Mrs. Oxford, the wife of the complaining witness, and that Mrs. Oxford was at that time the owner of said premises, and that, at that time, and for several weeks prior thereto, the complaining witness, Mr. Oxford, had abandoned said premises as a home and was making his home elsewhere because of family differences; that the said Mrs. Oxford was in fear of her husband and called defendant to come upon said premises for protection. If you find these facts to be true, then defendant was not a trespasser and was rightfully on said premises and had a right to resist any attempt on the part of Mr. Oxford to remove him from said premises, provided that he did not use excessive force.

" (6) The wife's dwelling house is that of the husband only while he makes it such in fact, and when he has abandoned it, and it is no longer his abode, it then becomes the right of his wife to invite persons to the premises, and the husband has no right to eject such persons therefrom. If, therefore, in the present case, you find that Mrs. Oxford was the owner of the premises on which the alleged

169 MICH.—3.

assault occurred, and that Mr. Oxford had abandoned said premises as a home, and that it was no longer his abode, the said Oxford had no right to eject the defendant from said premises."

Error is assigned upon the ruling admitting testimony showing improvements made to the property by Oxford, upon the refusal to charge as requested, upon the charge as given, and upon rulings excluding certain testimony tending, it is claimed, to show abandonment of the premises.

Both Mrs. Oxford and Mrs. Upton appear to have been eyewitnesses to the affray. At the trial the respondent asked that the prosecution be required to call Mrs. Oxford as a witness for the people; she having answered that she was willing to testify. The court declining to make such an order, he offered to call her as a witness for the respondent, which the court refused to permit; her husband, Oxford, declining to consent thereto. These rulings were excepted to and are alleged to have been error. The respondent asked that the prosecuting attorney be required to call Violet Oxford, a girl 11 years old, daughter of the complaining witness and of Mrs. Oxford, as a witness for the people. This the court refused, stating that the respondent could call her as a witness if he cared to do so. This ruling is assigned as error. This statement is sufficient to show the legal questions presented.

1. Whether Oxford had abandoned his home was a question of fact, and, if material, should have been submitted to the jury. Whether or not it was a material fact depended upon the view the jury should take of the testimony tending to prove that respondent, if rightfully on the premises, was the aggressor in the physical encounter which occurred. But it cannot be held that respondent, in going upon the premises, was a trespasser if he was there by invitation of Mrs. Oxford. Whether he was bound to leave them at the demand of Oxford would depend in this case upon whether Oxford had in fact abandoned dominion over them.

2. With respect to the affray and its attendant circumstances, Mrs. Oxford was a competent witness. Her husband was not a party to the proceeding, and, in a legal sense, her testimony concerning what occurred would be neither for nor against him. *Parsons* v. *People*, 21 Mich. 509. See *People* v. *Hendrickson*, 53 Mich. 525 (19 N. W. 169); *People* v. *Whitney*, 105 Mich. 622 (63 N. W. 765). The statute invoked is 3 Comp. Laws, § 10213, which provides that a husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent. When respondent offered Mrs. Oxford as a witness, the prosecuting attorney stated in making his objection that any testimony she might give would have a tendency to destroy marital relations contrary to public policy. It is also urged in this court that, under the circumstances disclosed, the testimony of the wife might, and probably would, tend to prove that her husband was the aggressor, or otherwise in the wrong, and so charge him with criminal conduct. These considerations have, it appears, influenced courts in the construction of statutes similar to our own. In *People* v. *Fowler*, 104 Mich. 449 (62 N. W. 572), respondent was charged with the crime of adultery. The prosecution offered the testimony of the complaining witness to prove that he had found respondent concealed in the sleeping room of his (witness') wife. The testimony was excluded. The prosecuting attorney in his opening to the jury had stated that he expected to prove the fact. This statement was assigned as error in this court; no proof of the fact having been made. In this court the prosecuting attorney urged that the testimony relied upon to prove the fact, namely, that of the complaining witness, was competent and wrongly excluded by the trial court. It does not appear that counsel for respondent argued this point. This court without discussing the question answered the contention by saying that the testimony was properly excluded, and citing *Hanselman* v. *Dovel*, 102 Mich. 505 (60 N. W. 978, 47 Am. St.

Rep. 557), "and cases there cited." The case of *Hanselman* v. *Dovel* was a civil action for damages of a criminal conversation between defendant and plaintiff's wife and the question involved was whether, after the divorce of plaintiff and his wife, the plaintiff was a competent witness to testify to the charge of adultery. It was said that the testimony proposed to be given by the husband, plaintiff, would affect the character of the wife, was offered in an action instituted by him in consequence of adultery, and was within the prohibition of the statute which forbids either in such a proceeding to testify. It seems to be clear that *Hanselman* v. *Dovel* is not authority for the ruling made in *People* v. *Fowler*. We do not find that *People* v. *Fowler* has been followed, certainly not in cases not involving adultery.

We are called upon to construe the statute, and, of course, with some reference to the nature of, and the reason for, the privilege therein recognized. As applied to this case, we are satisfied with the reasoning employed by Mr. Justice CAMPBELL in *Parsons* v. *People, supra,* and regard the decision reached in that case as controlling upon the question of the competency of the wife to testify to what was said and done upon the occasion in question. It is therefore unnecessary to enter upon a discussion of the subject or to review authorities. A discussion of the question of what testimony is anti-marital, with a copious citation of authority, may be found in 3 Wigmore on Evidence, § 2234 *et seq.* The following authorities support the conclusion we have reached: *People* v. *Langtree*, 64 Cal. 256 (30 Pac. 813); *State* v. *West*, 118 Wis. 469 (95 N. W. 521, 99 Am. St. Rep. 1002); *State* v. *Nelson*, 39 Wash. 221 (81 Pac. 721); *Campbell* v. *State*, 133 Ala. 158 (32 South. 635); *Ware* v. *State*, 35 N. J. Law, 553; *Higbee* v. *McMillan*, 18 Kan. 133. See, also, 1 Wharton on Criminal Evidence (10th Ed.), § 396; 1 Enc. Ev. p. 633. The court was in error in not requiring the prosecuting attorney to call Mrs. Oxford as a witness and in

refusing to admit her as a witness upon the offer of respondent.

3. Whether Violet Oxford was in fact an eyewitness of the affray seems to be disputed. It is singular that she was not interrogated upon the subject. It does not appear that any difficulty will be met with in ascertaining the fact, and the prosecuting attorney admits that he should call all eyewitnesses unless, in cases of misdemeanor, the testimony will be merely cumulative. It is not likely that upon a new trial there will be a failure to observe the governing rule.

It must be certified to the circuit court that the exceptions, which have been referred to, are sustained, and that an order should be entered setting aside the conviction of respondent and granting a new trial.

MOORE, C. J., and STEERE, McALVAY, BROOKE, BLAIR, and STONE, JJ., concurred. BIRD, J., did not sit.