951 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Eugene JOHNSON, Petitioner-Appellant,
v.
Joseph ABRAMAJTYS, Respondent-Appellee.
 No. 91-1465.
 United States Court of Appeals, Sixth Circuit.
 Dec. 17, 1991.
 
 Before MILBURN and RALPH B. GUY, JR., Circuit Judges, and GRAHAM, District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner appeals the district court's denial of his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. Petitioner challenges the constitutionality of his conviction on December 20, 1977, of possession with intent to deliver heroin in violation of Michigan law. Petitioner is presently incarcerated in Michigan. For the reasons that follow, we affirm.
 
 
 2
 On appeal, petitioner raises five issues as follows: (1) whether there was insufficient evidence of possession with intent to deliver; (2) whether the trial court acted unconstitutionally by convicting petitioner in his absence, and the trial court and district court both erred by not holding an evidentiary hearing regarding the voluntariness of the absence; (3) whether improper argument by the prosecutor denied petitioner a fair trial; (4) whether the court improperly refused to instruct on attempted possession; and (5) whether the sentencing of the petitioner was unconstitutional because of objected to findings of fact by the court and the presentence investigation report which were false and not supported by any evidence.
 
 I.
 A. Facts Presented At Trial
 
 3
 On Saturday, March 26, 1977, at approximately 12:30 a.m., the police went to an apartment house at 3006 Douglas Street, Saginaw, Michigan, with a valid search warrant. Looking through a sheer curtain on the front ground floor window, they could see two people sitting in the living room. The officers knocked on the door and announced they were police but did not receive any response. They then used a two-person battering ram to break down the front door. Both officers dropped the battering ram, and the first officer, with pistol drawn, ran past the man and woman in the living room through the kitchen to the bathroom in the rear. The second officer followed.
 
 
 4
 The officers saw three men in the bathroom, petitioner Eugene Johnson and co-defendants Pratt and Ferguson. Pratt and Ferguson were on either side of the toilet bowl. One of the co-defendants held in his hands a grey vial which he dropped when the other co-defendant shoved his hands, spilling the contents on the floor and into the toilet bowl. The first officer grabbed one co-defendant by the arm and shoved him out of the bathroom to the kitchen to the second officer. Then the first officer pulled the other co-defendant out of the bathroom to the kitchen also.
 
 
 5
 Petitioner was standing in the southwest corner of the bathroom with his back to the officers and his hands at his mid-section. After the co-defendants were removed from the bathroom, the first officer saw Johnson twirl around and $980 was thrown or "sprayed" over the bathroom floor. At the same time, a hard object was also heard to make a "klunk" on the bathroom floor. A black vial and brown powder were found interspersed with the money on the floor. The police did not at any time actually see petitioner possess the black vial.
 
 
 6
 None of the three men in the bathroom had been seen using the toilet or washing his hands. The police found no narcotics on the two people in the living room, and they were not arrested. However, heroin and heroin sales paraphernalia were found in the bathroom and in the kitchen. Petitioner's wallet, aluminum foil which had been cut into sizes used to package heroin, a spoon of the type used to measure heroin for sale, and a vial cap containing heroin residue were found on the kitchen table. A vial containing heroin was found on the kitchen floor, and a plate of the type used to "cut" or "step on" heroin in preparation for sale was in the bathroom sink. The plate contained heroin residue. The total amount of heroin seized throughout the house was 10.3 grams.
 
 
 7
 At trial, petitioner's attorney, Mr. Thick, attempted to introduce into evidence a photograph of the bathroom. The prosecutor, Mr. Klumpp, asked who took the photographs. Mr. Thick replied that he did, and in response Mr. Klumpp made a comment to the fact that there was an "ethical problem" with the photograph. The trial court denied petitioner's motion for a mistrial based on this comment. Petitioner's counsel also made a motion for a mistrial when petitioner Johnson did not show up on the third day of trial. Petitioner's attorney could not explain petitioner's absence, petitioner's father did not know where he was, and there was no answer to telephone calls made by the police to petitioner's home. The court determined that petitioner's absence was voluntary and ruled that the trial would continue.
 
 
 8
 Before instructing the jury, the court said that it would "instruct on attempt to deliver and possess." Nevertheless, the court instructed only on possession of heroin as a lesser included offense. The jury then found all three defendants guilty of possession with intent to deliver.
 
 B. Procedural History
 
 9
 The procedural history in this case is lengthy. On March 26, 1977, police arrested petitioner and two co-defendants, Elmer Ferguson and Willie Pratt, in Saginaw, Michigan, and charged them with possession with intent to deliver heroin in violation of Michigan Compiled Laws § 335.341(1) (1971) (repealed 1978).
 
 
 10
 Petitioner and his two co-defendants were tried together in a jury trial beginning December 13, 1977. Petitioner, who was free on bond, appeared for the first two days of trial on December 13 and 14, but failed to appear on December 15. The trial court adjourned until 1:30 p.m., but when petitioner failed to appear, the trial court issued a bench warrant for his arrest and ordered forfeiture of his bail bond. Petitioner never returned, and the trial court found he had waived his right to be present by voluntary absence. Subsequently, he was tried and convicted in absentia. On March 31, 1978, petitioner was then sentenced in absentia to twelve to twenty years in prison.
 
 
 11
 Two and one-half years after he fled, petitioner was apprehended by the police in June 1981. On August 6, 1981, petitioner, through counsel, moved for a new trial based on seven issues. These seven issues included all issues presented before this court except for the issue of whether the sentencing of the petitioner was unconstitutional because the court relied on unsupported information. Petitioner also moved for resentencing. The Saginaw County Circuit Court denied both motions.
 
 
 12
 Petitioner, through counsel, then appealed to the Michigan Court of Appeals and raised eight separate issues. These issues also included all the issues raised before this court except for whether the sentencing of the petitioner was unconstitutional because of objected to findings of fact. On February 5, 1982, before the Court of Appeals had reached a decision on petitioner's appeal, petitioner, through counsel, made a motion to the Court of Appeals to remand to the trial court to determine if the petitioner's absence from trial was voluntary. The Court of Appeals denied this motion on April 5, 1982. Subsequently, petitioner escaped custody of the Michigan Department of Corrections on November 4, 1982. Nevertheless, the Michigan Court of Appeals considered petitioner's appeal and rejected all but two of petitioner's arguments. The Court of Appeals remanded petitioner's case to the trial court to determine whether there were, in fact, res gestae witnesses who should have been endorsed and provided by the prosecutor under Michigan law. The Court of Appeals also remanded for resentencing finding that petitioner had been denied his right of allocution at his sentencing because of his absence. The prosecutor's application for leave to appeal to the Michigan Supreme Court was denied on July 22, 1983.
 
 
 13
 The Saginaw County Circuit Court held a hearing on February 27, 1987, to determine the issue of the res gestae witnesses and to resentence petitioner. Petitioner, who was still a fugitive at that time, was represented by retained counsel. Because a witness could not be found, the hearing was postponed. The hearing was postponed again because counsel for petitioner did not appear. Petitioner was then apprehended on September 3, 1987, the hearing resumed and was concluded on September 30, 1987. The Saginaw County Circuit Court determined that petitioner's challenge regarding the res gestae witnesses was meritless and then proceeded to resentence the petitioner to twelve to twenty years with credit for one year and one hundred sixty-four days. This sentence exceeded the sentencing guideline of thirty to forty-two months. The court noted the departure and gave its reasons for exceeding the guidelines on the sentencing guidelines departure form. The court also denied petitioner's motion for a new trial on October 1, 1987.
 
 
 14
 Petitioner appealed to the Michigan Court of Appeals which affirmed the court below on March 27, 1989. On July 5, 1989, petitioner, through counsel, filed a delayed application for leave to appeal to the Michigan Supreme Court which was denied on January 29, 1990. In this delayed application, petitioner raised eight issues which included all the issues presented before this court.
 
 
 15
 On May 30, 1990, petitioner, by counsel, petitioned for a writ of habeas corpus with the United States District Court raising the five issues previously stated. All issues presented to this court have met exhaustion requirements. This timely appeal followed.
 
 II.
 
 16
 The preliminary threshold standard by which we review the district court's denial of a writ of habeas corpus is de novo, but complete deference is given to evidence supported state findings of fact. Lundy v. Campbell, 888 F.2d 467, 469 (6th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 2212 (1990).
 
 A. Sufficiency of the Evidence
 
 17
 Petitioner argues that his due process rights under the Fourteenth Amendment were violated because the evidence presented at trial was insufficient to show the elements of possession or intent to distribute. In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court established the standard to be applied in determining whether the evidence supporting a state conviction is sufficient to satisfy due process. The proper inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt based upon the evidence presented at trial. Furthermore, this court must consider the evidence in the light most favorable to the prosecution. Jackson, 443 U.S. at 324; see also Spalla v. Foltz, 788 F.2d 400, 402 (6th Cir.), cert. denied, 479 U.S. 935 (1986). Moreover, evidence will not be considered insufficient simply because it is circumstantial. Foltz, 788 F.2d at 402.
 
 
 18
 Mich.Comp. Laws § 335.341(1) (1971) (repealed 1978) read in relevant part, "it is unlawful for any person to ... possess with intent to ... deliver, a controlled substance." "Possession" means dominion or the right of control of the substance with knowledge of its presence and character. People v. Mumford, 60 Mich.App. 279, 230 N.W.2d 395, 396 (1975). Possession may be actual or constructive and "may be proved by circumstantial evidence and reasonable inferences therefrom." Id. at 396-97.
 
 
 19
 A recapitulation of all the facts is unnecessary. It is sufficient to observe that a rational jury could conclude beyond a reasonable doubt that petitioner had possessed heroin based on the fact that the black vial containing heroin was found on the bathroom floor near petitioner, and the "klunk" which was later determined to be the black vial was heard over the "spraying" of the money on the bathroom floor.
 
 
 20
 Petitioner next argues that this evidence can lead only to a logical conclusion that petitioner intended to buy heroin, not that he intended to distribute, deliver, or sell it. He further argues that in order to prove intent, a jury would have to infer from the possession of the heroin that petitioner intended to distribute it.
 
 
 21
 In Michigan, where a fact is established by inference, the establishment of that fact may not then be used to infer a second fact. People v. Atley, 392 Mich. 298, 220 N.W.2d 465, 473 (1974). This principle is called the "no inference upon an inference" doctrine. Id. Petitioner contends that the element of intent to distribute has been impermissibly built upon possession of heroin which was established by inference, viz., the black vial containing heroin lying on the floor. Obviously, possession is an indispensable element of the offense for which petitioner was convicted, but, in this case, possession of heroin is not the sole basis for inferring intent to distribute. Defendant also had a large sum of cash on his person which he dropped to the floor when the police came in. This fact could lead a rational jury to determine beyond a reasonable doubt that petitioner was there to do more than buy drugs for personal use.
 
 
 22
 Petitioner also relies on United States v. Ramirez, 880 F.2d 236 (9th Cir.1989), to support his argument of insufficient evidence. In Ramirez, the Ninth Circuit overturned defendant Ramirez' conviction of possession with intent to distribute cocaine and heroin in violation of federal law. Defendant Ramirez was arrested by police in the house where his mother lived. Upon entering the home, police saw defendant Ramirez emerge from the master bathroom. A triple beam scale was in plain sight. A rolled twenty dollar bill with traces of cocaine, a single razor blade, and some plastic bags were found in Ramirez' pants pockets. A ledger, money, drugs, and a gun were concealed in the master bedroom and bathroom. Testimony at trial indicated that Ramirez' sister had graduated from high school the day before and that Ramirez had attended her graduation. Other testimony indicated that Ramirez lived with his girl friend at another house and had only returned to his mother's residence the night of his sister's graduation where he had slept in his sister's bedroom. Ramirez' mother was also convicted of possession with intent to distribute heroin and cocaine in violation of federal law.
 
 
 23
 In determining that the evidence was insufficient to convict Ramirez, the Ninth Circuit stated that "[n]othing established that Ramirez knew of the money, drugs, or weapon in the master bedroom." Id. at 238. The court further stated, "there is nothing incriminating in the drugs and money found in the house unless the defendant is shown to be aware of them." Id. Moreover, the Ninth Circuit found that mere knowledge of scales in the bathroom did not establish intent to distribute cocaine or heroin. Id.
 
 
 24
 Petitioner contends that in his case, as in that of Ramirez, petitioner's "mere presence" in a house containing heroin and drug paraphernalia is insufficient evidence to prove intent to distribute. However, petitioner's wallet was found in plain sight on the kitchen table along with other drug paraphernalia. A rational jury could conclude that petitioner was aware of the drugs and drug paraphernalia in the home. Furthermore, petitioner possessed a large sum of cash far in excess of twenty dollars. As earlier stated, based upon petitioner's presence in a house which contained, in plain view, drugs and other drug paraphernalia coupled with petitioner's possession of a large sum of cash, a rational jury could conclude that petitioner intended to do more than buy heroin for personal use.
 
 
 25
 Finally, petitioner observes that the Michigan Court of Appeals incorrectly wrote in its opinion that petitioner was seen by police trying to flush heroin down the toilet. Nevertheless, as the district court noted, that statement was not made in connection with the determination of whether sufficient evidence of possession with intent to deliver existed. Furthermore, this court has not relied on the Michigan Court of Appeals' misstatement of fact, but rather has applied the appropriate constitutional standard upon facts well grounded in the record.
 
 
 26
 B. Conviction of the Petitioner in his Absence
 
 
 27
 Petitioner contends that the district court's refusal to grant a mistrial due to petitioner's absence and the subsequent continuation of the trial culminating in his conviction violated his Sixth Amendment right to confront adverse witnesses. Petitioner further contends the trial court's and district court's refusals to grant an evidentiary hearing on the voluntary nature of his absence violated due process under the Fourteenth Amendment.
 
 
 28
 A state court's findings shall be presumed to be correct, and an evidentiary hearing in district court is not mandatory unless one of the eight circumstances listed in 28 U.S.C. § 2254(d) is shown by the petitioner, admitted by the state, or otherwise appears from the record. Ford v. Seabold, 841 F.2d 677, 691 (6th Cir.), cert. denied, 488 U.S. 928 (1988); McMillan v. Barksdale, 823 F.2d 981, 983 (6th Cir.1987); see also 28 U.S.C. § 2254(d). One of the circumstances listed is that petitioner did not receive a full, fair, and adequate hearing in the state court proceeding.
 
 
 29
 It is unconstitutional to try a defendant in his absence unless the absence is voluntary. Taylor v. United States, 414 U.S. 17 (1973); Illinois v. Allen, 397 U.S. 337, 338 (1970). However, where the defendant's absence is voluntary, there is no violation of defendant's constitutional rights to continue the trial in his absence. Taylor, 414 U.S. at 19; Allen, 397 U.S. at 342.
 
 
 30
 This court has considered a defendant's voluntary waiver of his right to be present in Finney v. Rothgerber, 751 F.2d 858 (6th Cir.), cert. denied, 471 U.S. 1020 (1985). In Finney, the defendant failed to appear in court for the second part of a bifurcated trial. The court held that where the defendant at no time offered an explanation for his absence, and was aware of the legal processes taking place and of his right and obligation to be present, the trial court's determination that the defendant had voluntarily waived his right to be present was fully supported by the record. This court then set forth the proper procedure for a trial court to conduct in determining whether a defendant's absence from trial is voluntary or involuntary. The court stated:
 
 
 31
 [I]f the trial court had conducted an inquiry and made a definitive finding on the record before proceeding with the trial, the issue might have been foreclosed and further litigation avoided. This brief proceeding could have consisted of a statement on the record at the time which indicated the defendant's earlier presence and his knowledge that he was required to return for the remainder of the trial. The court next could have offered defense counsel an opportunity to explain his client's absence. If no satisfactory explanation was made, the court could have made a specific determination on the record that the defendant had voluntarily and knowingly waived his right to be present.
 
 
 32
 Id. at 863. Unlike in Finney, defendant is now offering an explanation for his absence. However, the trial court did conduct procedures as described in Finney. An inquiry was held in which defense counsel and petitioner's family were given an opportunity to explain petitioner's absence. Neither petitioner's counsel, nor his family, nor the police after conducting an investigation could ascertain petitioner's whereabouts or reasons for his absence. Consequently, and in accord with Finney, the trial court made the specific determination that petitioner had voluntarily and knowingly waived his right to be present.
 
 
 33
 It is worthwhile to note that petitioner disappeared and did not reappear with any explanation for his absence until the police apprehended him two and one-half years later. Therefore, we do not find it credible that petitioner's failure to appear at trial or to even notify his counsel is due simply to threats against his life and those of his family. In light of the circumstances surrounding petitioner's departure and the fact that the trial court conducted reasonable procedures to ascertain the voluntariness of petitioner's absence, the trial court's denial of a mistrial and evidentiary hearing did not violate due process. Therefore, the district court did not err in refusing to grant an evidentiary hearing or in determining that the trial court did not abuse its discretion in denying petitioner a mistrial or an evidentiary hearing on this issue.
 
 
 34
 C. Prosecutorial Misconduct Resulting in Denial of a Fair Trial.
 
 
 35
 In order for prosecutorial misconduct such as improper argument to attain the level of a constitutional violation, the prosecutor's comments must so infect the trial with unfairness as to make the resulting conviction a denial of due process. Donnelly v. DeCristoforo, 416 U.S. 637, 645 (1974). In determining whether a prosecutor's remarks violate defendant's rights to due process, the court must consider the comments in light of the entire record. Donnelly, 416 U.S. at 645. In reviewing the record as a whole and petitioner's claim of prosecutorial misconduct, this court must consider several factors including:
 
 
 36
 [T]he degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidently placed before the jury, and the strength of the competent proofs introduced to establish the guilt of the accused.
 
 
 37
 Cook v. Bordenkircher, 602 F.2d 117, 120 (6th Cir.) (quoting United States v. Leon, 534 F.2d 667, 679 (6th Cir.1976)), cert. denied, 444 U.S. 936 (1979).
 
 
 38
 Petitioner asserts that in three instances the prosecutor made improper arguments in petitioner's trial. First, petitioner contends that the prosecutor accused his trial counsel of unethical conduct. At trial, petitioner's defense counsel sought to introduce a photograph of the bathroom where the arrest took place. The prosecutor asked who took the photograph and defense counsel responded that he did. The prosecutor responded with a comment to the effect that defense counsel's taking the picture raised an "ethical problem."[1] J.A. 206. However, as the district court noted, it is unclear whether the jury actually heard such a comment. Defense counsel objected, and the jury was asked to leave the courtroom. The court then heard discussion regarding the issue. When the jury returned, the court instructed the jurors that:
 
 
 39
 [Y]ou are to decide this case on the basis of the evidence which comes from the testimony of the witnesses and the exhibits which are received in evidence and not from the remarks of counsel.
 
 
 40
 Petitioner contends that this general instruction is not enough to reverse prejudice done to him by the prosecutor's statement. However, the prosecutor's comment is not sufficiently egregious to rise to the level of a constitutional violation particularly in light of the court's curative instruction.
 
 
 41
 Petitioner next contends that the prosecutor commented on the failure of the defense to produce two res gestae witnesses, and thus shifted the burden of proof to petitioner. A prosecutorial argument which shifts the burden of proof denies due process for the defendant. United States v. Smith, 500 F.2d 293, 297-98 (6th Cir.1974). To fully analyze this challenge, it is necessary to consider comments made by both the prosecutor and defense counsel in their closing arguments. Defense counsel stated:
 
 
 42
 But remember, when the system becomes so poorly employed that the doubts are asked, in a case like this, then you are fulfilling your function, because I think you have a right to question what the police did in this case, and I think the way they handled this evidence, the way this case has been presented to you, the way they have suppressed evidence from witnesses, the way they have denied the lab the right to make fingerprints of people that are on the scene.
 
 The prosecutor in rebuttal stated:
 
 43
 Now, the defendants have produced witnesses here in court, and the People have produced every single witness that we are required to by law, and that's what the judge has told you. The defense could have called these other witnesses.
 
 
 44
 (Emphasis added.)
 
 
 45
 Defense counsel objected to the prosecutor's statement at trial asserting it shifted the burden of proof. In support of this argument, petitioner relies on People v. Fowler, 104 Mich. 449, 454, 62 N.W. 572 (1895), in which the prosecutor in closing argument stated that the defendant should have called a witness. The Fowler court held that such a statement was improper and a ground for reversal. Fowler is simply not analogous to the present case. As the district court correctly found, the prosecutor's comments were simply a response to the defense's accusation that it withheld evidence from witnesses. In addition, petitioner's argument that the witnesses referred to by the prosecution were res gestae witnesses is incorrect. The Michigan Court of Appeals considered the status of these witnesses and determined that they were not res gestae witnesses.
 
 
 46
 Petitioner's third contention relating to prosecutorial misconduct concerns another comment made in closing argument. The prosecutor stated:
 
 
 47
 The testimony has shown that the Saginaw Police Department conducted what is known as a raid at an apartment at 3006 Douglas Street on the 26th of March, shortly after midnight. I think its curious that Mr. Thick, (defense counsel) in his opening statement, referred to this apartment as an establishment. Perhaps Mr. Thick knows something about that building that the rest of the people don't know.
 
 
 48
 Defense counsel did not object to this statement. However, the Michigan appellate courts considered this issue. The district court correctly held that the trial court cured any prejudice which might have occurred as a result of this statement by instructing the jury that "[i]t is the answers of the witnesses which provide the evidence" and that the arguments of the attorneys are not evidence.
 
 
 49
 In sum, these three isolated statements by the prosecutor, when viewed in the context of the entire three-day trial and the court's curative instructions, did not so infect the trial as to deny petitioner due process.
 
 
 50
 D. The Trial Court's Failure to Instruct the Jury on Attempt
 
 
 51
 The trial court instructed the jury on the offense of possession with intent to deliver heroin as well as the lesser included offense of possession of heroin. The court said that it would "instruct on attempt to deliver and possess," but it did not do so. Petitioner's counsel did not object to the lack of an instruction on attempt; however, the Michigan state courts nevertheless addressed the issue on its merits.
 
 
 52
 Petitioner makes two distinct due process arguments concerning the trial court's failure to give the instruction on attempted possession. First, petitioner argues that the due process clause of the Fourteenth Amendment requires giving an instruction on a lesser included offense where the instruction is supported by evidence in the case. In this connection, petitioner argues that the evidence in this case supports the instruction of attempted possession. Second, petitioner argues that a state court which refuses to instruct on a lesser included offense in violation of its own law denies the defendant due process of law. Petitioner further argues that under Michigan law, it is reversible error to refuse to instruct on attempt where supported by the evidence.
 
 
 53
 This court in Bagby v. Sowders, 894 F.2d 792 (6th Cir.) (en banc), cert. denied, --- U.S. ----, 110 S.Ct. 2626 (1990), considered both due process arguments regarding instructions on lesser included offenses. As to the first argument, this court held that experience has shown that failure to give an instruction on a lesser included offense is not of the "character or magnitude which should be cognizable on collateral attack." Id. at 797. Stated another way, failure to instruct on lesser included offenses in a noncapital case does not by itself result in a miscarriage of justice in violation of due process of law. Id. Accordingly, petitioner's first argument must fail.
 
 
 54
 As to the second argument, this court in Bagby held that "considerable deference is due state courts in the application of their own law." Id. at 794. The court then stated:
 
 
 55
 That is because where, as here, the highest court of a state has reviewed a defendant's request for a lesser included offense instruction and concluded that it is not warranted by the evidence elicited at trial, that conclusion is axiomatically correct, as a matter of state law. Accordingly, the circumstances that would induce a federal court to overturn the state court determination would need to be extraordinary, indeed.
 
 
 56
 Id. at 795.
 
 
 57
 The Michigan Court of Appeals considered petitioner's challenge to the trial court's failure to give the attempt instruction and denied relief. Subsequently, the Michigan Supreme Court denied petitioner's delayed application to appeal which included a challenge to the failure to give the attempt instruction.
 
 
 58
 As in Bagby, the state's highest court reviewed petitioner's request for an instruction on a lesser included offense and denied it. Finally, finding no extraordinary circumstances to overturn the state court's determination of its own law, petitioner's second argument must also fail.
 
 
 59
 E. Use of Inaccurate Information to Sentence Petitioner
 
 
 60
 Petitioner asserts that his constitutional rights to due process under the Fourteenth Amendment were violated because the sentencing court on September 30, 1987, relied on inaccurate information in order to sentence petitioner to twelve to twenty years in prison instead of the thirty to forty-month sentence applicable under the Michigan Sentencing Guidelines.
 
 
 61
 Petitioner specifically objects to two pieces of information. First, petitioner objects to the scoring he received under the Michigan Sentencing Guidelines based upon the amount of heroin the police found when they arrested him. At the hearing, petitioner's counsel noted that the presentencing report inaccurately stated that the amount of heroin found by the police when petitioner was arrested was eleven grams. Petitioner's counsel objected to this information and advised the court that the amount found was 10.7 grams. Petitioner's counsel, in fact, misstated the correct amount which is actually 10.3 grams of heroin. Nevertheless, the court, upon considering this information, determined that "[e]leven grams and 10.7 is so close that it doesn't appear to me to make--I'll overrule defense counsel's objections to that." Consequently, petitioner received a score of ten points under the guidelines as opposed to six. Petitioner argues that the use of the eleven gram figure violated his due process rights because the sentencing judge failed to follow Michigan's sentencing guidelines which provide a specific scoring for defendants found with less than eleven grams of an illegal substance. Therefore, the state court's failure to follow its own rule constituted a denial of due process.
 
 
 62
 However, as respondent notes, the Michigan Sentencing Guidelines are not mandatory. Sentencing judges are required to consult the guidelines but are not required to adhere to them. People v. Potts, 436 Mich. 295, 461 N.W.2d 647, 650 (1990). Despite the guidelines, sentencing in Michigan is still a discretionary judicial act. People v. Milbourn, 435 Mich. 630, 461 N.W.2d 1, 6 (1990). Furthermore, the guidelines do not create substantive rights, but merely are "a tool to assist the sentencing judge in the exercise of discretion." Potts, 461 N.W.2d at 650 (citation omitted). The sentencing court may depart from the guidelines merely by explaining its reason for doing so. Therefore, the trial court's conscious and deliberate decision to use the eleven gram figure instead of the 10.7 gram figure did not violate due process. See Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir.1988) (state court's misinterpretation of state sentencing guidelines raises issue of state law only and thus is not cognizable in federal habeas action); Thomas v. Foltz, 654 F.Supp. 105, 106-107 (E.D.Mich.1987).
 
 
 63
 Second, petitioner objected at the sentencing hearing to the court's conclusion that petitioner was "heavily involved in drug traffic." Petitioner argued that the court drew this conclusion from two paragraphs in the presentence report. The presentence report states in relevant part:
 
 
 64
 This agent could find no evidence to show the respondent has problems with the abuse of alcohol or illegal use of any type of drug, including heroin.
 
 
 65
 According to all available information, the respondent was, however, deeply involved with the heroin trade in Saginaw. Generally, it is possible to get specific information "from the street" in such matters. In this case, this agent found most individuals greatly fear the respondent, known to them as Mr. Blue, and denied any knowledge of his activities.
 
 
 66
 Petitioner also argues that rather than support a finding that he was "deeply involved with the heroin trade," these comments support a conclusion that he was not involved in the heroin trade. However, an examination of the hearing transcript indicates that the court relied on other factors in determining that petitioner was deeply involved in the heroin trade. In response to petitioner's challenge that he was heavily involved in the drug trade, the court explained, "there was paraphernalia in the house down there, and which would indicate that there was--and two of these people also indicated that they went to the house to purchase drugs, which would appear to the Court that there was heavy involvement in the drug business."
 
 
 67
 Moreover, as the district court concluded, the sentencing judge relied on a number of factors besides simply the amount of heroin found when petitioner was arrested and his conclusion that petitioner was involved heavily in the heroin trade. The sentencing judge also based his decision on the following facts: petitioner had been out of prison twenty-four or twenty-five days when he was arrested for the present offense; petitioner absconded during trial and later, after he was apprehended and returned to prison, he escaped again; petitioner's parole for a previous conviction for assault was revoked twice for carrying a concealed weapon; and the information in the presentence report indicated to the court that there had been no change in his behavior.
 
 
 68
 A sentencing judge may consider evidence from reliable sources concerning the circumstances of an offender's crime and the offender's life and characteristics in determining an appropriate sentence. Williams v. Oklahoma, 358 U.S. 576, 584 (1959). The sentencing judge properly relied on the information presented to him at the sentencing hearing. Petitioner, who was represented by counsel, had the opportunity to rebut this information. Therefore, petitioner's due process rights were not violated by the sentencing court in imposing the twelve to twenty-year sentence.
 
 III.
 
 69
 For the reasons stated, we find no violations of the petitioner's constitutional rights in the conduct of his trial or his subsequent resentencing. Accordingly, the district court's order dismissing this petition for writ of habeas corpus is AFFIRMED.
 
 
 
 *
 Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The transcript does not set forth what the prosecutor said to defense counsel because the court reporter was occupied with identifying the exhibit at the time the conversation took place