Bradford KING, Petitioner–Appellant,

v.

Frank ELO, Respondent–Appellee.

No. 00–1747.

United States Court of Appeals, Sixth Circuit.

April 9, 2002.

---

806

Before KENNEDY, BOGGS, and DAUGHTREY, Circuit Judges.

KENNEDY, Circuit Judge.

Petitioner Bradford King appeals the denial of his application for writ of habeas corpus. For the reasons set forth below, we affirm the judgment of the district court.

I.

Following a jury trial in Calhoun County Circuit Court, Michigan, Petitioner Bradford King was convicted of killing his wife, Diane King. The jury found Mr. King guilty of first-degree murder and possession of a firearm during the commission of a felony. He was sentenced to consecutive prison terms of two years and life without the possibility of parole.

Mr. King was a former police officer and a criminal justice professor at Western Michigan University at the time of the

shooting. Mrs. King was a well-known television newscaster for a local Battle Creek, Michigan television station. On February 9, 1991, Mrs. King was found dead from gunshot wounds. She was lying just outside her car in the driveway of the Kings' rental farmhouse near Marshall, Michigan. The Kings' two young children were still in the backseat of the car. According to police, Mr. King called 911 to report that he had discovered the body upon his return from a walk on the property.

Numerous pre-trial motions were filed, including multiple motions in limine. The defense sought to exclude the testimony of several witnesses relating some of Mrs. King's statements before her death. The witnesses would testify that Mrs. King told them she was receiving phone calls at work from an individual wanting her to go out to lunch with him, and that she received a letter with words cut out of a newspaper or magazine stating "You will be sorry you didn't have lunch with me." (J.A. at 319). The defense also sought to exclude the testimony of three female witnesses that suggested that Mr. King was having sexual relationships with them.

In addition, the defense filed a motion to delay the selection of the jury until after all the in limine issues were resolved. Defense counsel argued that he was placed in a dilemma because he was unable to effectively question prospective jurors without knowing what evidence the court would admit or exclude at trial. If he asked questions regarding the jurors' attitudes to evidence that was later ruled inadmissible, specifically the allegations that Mr. King was involved in extramarital sexual relationships, he might needlessly taint the jurors. On the other hand, if he did not ask such questions, then he would not have the opportunity to explore the prospective jurors' attitudes on those issues before selecting the jury. The court denied defendant's motion to delay the selection of a jury. In doing so, the court stated that King would not be prejudiced by any question asked regarding evidence that was later ruled inadmissible, because the jury was instructed that questions by counsel during voir dire were not to be considered evidence. The court also denied defendant's motion for a stay so that he could apply for interlocutory appeal of this order.

The court later heard offers of proof and resolved the evidentiary questions. It ruled that witnesses could testify as to Mrs. King's general statements regarding her fears, arising from the phone calls and letter. The court ordered, however, that before a witness could testify as to her marriage or work plans, a further offer of proof would be necessary. As to the testimony regarding sexual relationships, the court applied Michigan Rule of Evidence 404(b), and ordered that no evidence of sexual relations with women other than King's wife could be presented unless the defense placed the question of motive in issue.

During his opening statement, the prosecutor referred to the phone calls and the letter with words cut out of a newspaper or magazine. Regarding the letter, the prosecutor stated:

> Now, probably you're all familiar with these types of notes from watching television programs and movies. And the television programs and in the movies these crazed killers send these notes to the victim. But the experts know one thing, experience shows that these notes are either from family members or from the Defendant himself.

(J.A. at 386). Defense counsel objected, and the prosecutor indicated that he would present an expert to support the statement. The court instructed the prosecutor

not to refer to the matter again until a proper foundation was laid.

The prosecutor also used a time-line chart in his opening statement. On the chart were references to "dates" that Mr. King had with several women, other than his wife. The defense moved for a mistrial, arguing that the use of the words "date," "lunch date," and "movie date" on the chart implied that Mr. King was having sexual relations with women other than his wife, and that the prosecutor was circumventing the court's ruling on that issue. The defense also argued that the references to what experts know about these types of letters required a mistrial. The court denied the motion, finding that the references on the chart were not so blatant as to require a mistrial. The court also noted that the jurors had been instructed that opening statements are not evidence. The court, however, ordered that the chart not be further used, and that it be removed from the courtroom.

At trial, the court heard offers of proof from Heather Taylor and Julie Cook, two female witnesses who were friends of Mr. King. The court found portions of their testimony material and relevant, and permitted them to testify. Taylor was permitted to testify that she met with Mr. King twice for lunch. During one of the lunches, he told Taylor that he and his wife were having problems. Taylor also testified that, after the death of Ms. King, she met with Mr. King twice. At one of those meetings, Taylor testified that Mr. King told her "it doesn't matter because they can't prove a fucking thing." (J.A. at 276). Cook was not permitted to testify about going to dinner, to her apartment, and to the movies with Mr. King. She was, however, permitted to testify that Mr. King made a phone call from her apartment to Mrs. King telling her that he would be working late that evening. Cook also tes-

tified that Mr. King led her to believe that his wife had left him. Hill was not permitted to testify as to any personal activities she engaged in with Mr. King. She was permitted to testify that Mr. King told her that Mrs. King initiated their separation and that he was a single parent. In permitting the witnesses to testify, the court noted that Mr. King's counsel could cross-examine the witnesses if he was worried that the jury would draw the inference that Mr. King was maintaining sexual relationships with these women.

Another witness, Joanna Karaba, testified that she went with Mrs. King and two of their children to an ice show in late 1990. When they arrived home after dark, Mrs. King stopped Karaba from exiting the car and made her wait until after Mr. King turned on the lights and came out to meet them. Mrs. King told her about the phone calls and the letter, and that they frightened her. Karaba then added that Mrs. King said that at one time she had thought that Mr. King was playing a sick joke on her, and that "we laughed about that." (J.A. at 139–40). The defense moved for a mistrial, arguing that the prosecutor intentionally elicited testimony from Karaba that Mrs. King had thought Mr. King was responsible for the calls and letter. The court denied the motion, finding that the statement was an offhand comment, and that Mrs. King and Karaba did not give it any credence because they laughed about it.

Following his conviction, Mr. King appealed to the Michigan Court of Appeals, raising seven assignments of error, including the following three:

I. Defendant's constitutional rights to due process and an impartial jury were denied by the trial court's failure to grant a change of venue; refusal to delay selection of the jury until all pretrial motions in limine were resolved; refusal

to grant defendant extra peremptory challenges; refusal to sequester the jury; and denial of a mistrial where spectators wore buttons depicting the decedent during the trial.

III. Defendant was denied a fair trial where the prosecution, despite a pretrial ruling that evidence of alleged sexual relationships between defendant and women other than his wife was inadmissible, intentionally used its opening argument and testimony from witnesses to infer the existence of such relationships, and the trial court refused to grant a mistrial.

IV. The trial court reversibly erred in denying defendant's motion for mistrial, where the prosecutor asserted before the jury that he would present expert testimony to show that the threatening letter was sent by Mr. King, and later a witness testified that Mrs. King believed defendant was responsible for the phone calls, despite the court's ruling that such evidence was inadmissible.

The Michigan Court of Appeals affirmed the conviction. Mr. King then filed an application for leave to appeal to the Michigan Supreme Court, raising the same seven issues. The application was denied.

Mr. King then filed an application for habeas corpus relief in the U.S. District Court for the Eastern District of Michigan, raising the following four claims:

I. PETITIONER'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND AN IMPARTIAL JURY WERE DENIED BY THE TRIAL COURT'S FAILURE TO GRANT A CHANGE OF VENUE; REFUSAL TO DELAY SELECTION OF THE JURY UNTIL ALL PRE–TRIAL MOTIONS IN LIMINE WERE RESOLVED; REFUSAL TO GRANT PETITIONER EXTRA PEREMPTORY CHALLENGES; REFUSAL TO SEQUESTER THE JURY; AND DENIAL OF A MISTRIAL WHERE SPECTATORS WORE BUTTONS DEPICTING THE DECEDENT DURING THE TRIAL.

II. PETITIONER WAS DENIED DUE PROCESS WHERE THE PROSECUTION, DESPITE A PRE–TRIAL RULING THAT EVIDENCE OF ALLEGED SEXUAL RELATIONSHIPS BETWEEN PETITIONER AND WOMEN OTHER THAN HIS WIFE WAS INADMISSIBLE, INTENTIONALLY USED ITS OPENING ARGUMENT AND TESTIMONY FROM WITNESSES TO INFER THE EXISTENCE OF SUCH RELATIONSHIPS, AND THE TRIAL COURT REFUSED TO GRANT A MISTRIAL.

III. PETITIONER WAS DENIED DUE PROCESS OF LAW WHERE HIS MOTIONS FOR MISTRIAL WERE DENIED AFTER THE PROSECUTOR ASSERTED BEFORE THE JURY THAT HE WOULD PRESENT EXPERT TESTIMONY TO SHOW THE THREATENING LETTER WAS SENT BY MR. KING, AND NO SUCH EXPERT TESTIMONY WAS AVAILABLE, AND LATER A WITNESS TESTIFIED THAT MRS. KING BELIEVED PETITIONER WAS RESPONSIBLE FOR THE PHONE CALLS, DESPITE THE COURT'S RULING THAT SUCH EVIDENCE WAS INADMISSIBLE.

IV. PETITIONER WAS DENIED DUE PROCESS OF LAW WHERE THE TRIAL COURT FAILED TO CONTROL MEDIA COVERAGE OF THE TRIAL, WHICH INTERFERED WITH THE SEQUESTRATION OF WITNESSES, AND FAILED TO FULLY INVESTIGATE AND BAR THE TESTIMONY OF ANY WITNESSES WHO VIOLATED THE SEQUESTRATION ORDER.

The district court denied relief, rejecting each of Mr. King's claims on their merits. Mr. King appeals, advancing only the first three claims on appeal.

## II.

### A. Exhaustion

As an initial matter, Respondent argues that Mr. King has not exhausted his state court remedies as to one of his claims, and that this court, therefore, may not grant him relief. In *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the Supreme Court held that a district court must dismiss a petition in which not all claims have been exhausted, leaving the prisoner with the option of returning to state court to exhaust any unexhausted claims, or to amend his petition so as to present only unexhausted claims to the federal court. Respondent contends that Mr. King did not present the jury-related issues in Claim I to the Michigan state courts as issues of federal law, with the exception of the venue issue. The district court, without addressing exhaustion, denied Mr. King's petition on the merits. Mr. King, in his reply brief, contends that he raised these issues to the Michigan Court of Appeals under both state and federal law, and that the court applied federal law in rejecting his claims and affirming his conviction.

Based on the record submitted to us, we are unable to resolve this issue. The briefs filed with the Michigan Court of Appeals are not part of the record before us. It is not clear from that court's published opinion whether Mr. King had raised the issues as federal Constitutional violations. (J.A. at 13–16). Because we will affirm the district court's rulings on the merits of Mr. King's claims, it is unnecessary to resolve the exhaustion question. *See* 28 U.S.C. § 2254(b)(2) (permitting denial of a writ on the merits, notwithstanding petitioner's failure to exhaust).

### B. Merits

Assuming, as Mr. King contends, that he adequately raised his claims as issues of federal law, and that the Michigan courts rejected those federal claims, we turn now to the merits of his claims. We review the district court's legal conclusions de novo and its factual findings for clear error. *DeLisle v. Rivers*, 161 F.3d 370, 380 (6th Cir.1998). Mr. King filed his petition for federal habeas corpus relief on March 5, 1998. Thus, the 1996 amendments to 28 U.S.C. § 2254, embodied in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), are applicable to Mr. King's petition. *See Lindh v. Murphy*, 521 U.S. 320, 326–27, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Section 2254(d) of the AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has since clarified that,

> [Section] 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with

respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). With these standards in mind, we consider each of Mr. King's claims in turn.

Claim I

Mr. King's first claim is that he was denied his rights to due process and an impartial jury by the trial court's refusal to delay voir dire until after the pre-trial motions were resolved. He argues on appeal that defense counsel "could not take the risk of inquiring into the jurors' attitudes and biases about particular areas of evidence, and thus exposing evidence that might later be held inadmissible." (Brief at 54). Mr. King argues that he was denied his Constitutional right to adequate voir dire, as recognized by the Supreme

Court in *Morgan v. Illinois,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

In *Morgan,* the Court stated that the conduct of voir dire is generally best left to the trial court's discretion. *Id.* at 729, 112 S.Ct. 2222. The Court did state, however, that the voir dire must be at least adequate to permit the defendant to identify unqualified jurors, or those who will not be able to impartially follow the court's instructions. But it is clear that a defendant is not entitled to inquire into every specific prejudice feared by the defendant. *Ristaino v. Ross,* 424 U.S. 589, 594, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976). In this case, Mr. King's counsel was not prevented from inquiring into the prejudice that he was most concerned about. He certainly could have asked about any prejudices the prospective jurors might have held against someone who engages in extramarital relationships. That evidence about such relationships might not be admitted at trial is of no moment. As the trial court noted, the jury was instructed that voir dire questions were not evidence, but rather inquiries into their beliefs and attitudes. Mr. King cites to no Supreme Court opinion, nor any federal opinion, in which a trial court's refusal to resolve all evidentiary questions prior to voir dire was held to be a violation of the right to adequate voir dire. The Michigan courts' rejection of this claim was not an unreasonable application of clearly established federal law.

Claim II

Mr. King's second claim is that he was denied his right to due process when the prosecutor intentionally undermined a pre-trial order by using a chart suggesting extramarital sexual relations, and by eliciting testimony suggesting such relations. This claim is styled as a prosecutorial misconduct claim. The Michigan Court of

Appeals rejected this claim, observing that the evidence concerning alleged affairs would now be held admissible, under *People v. VanderVliet,* 444 Mich. 52, 508 N.W.2d 114 (1993), a case decided after Mr. King's trial. (J.A. at 14). In the alternative, the Court of Appeals held that the prosecutor's actions did not deny Mr. King a fair trial.

In order to establish that prosecutorial misconduct rises to the level of a constitutional violation, a petitioner must show that the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). The Court of Appeals ruled that the prosecutor's use of the chart and elicitation of testimony suggesting sexual relationships did not deny Mr. King a fair trial. We conclude that this was not an unreasonable application of clearly established federal law. The chart used in opening arguments was not evidence, and the jury was instructed that the lawyers' arguments were not evidence. As to the testimony of the women, the trial judge did not think that the testimony violated his order, and permitted defense counsel to cross-examine the witnesses if he thought that there was an implication of sexual relations. In any event, even if the prosecutor's acts were improper, they were not so egregious as to deny Mr. King his right to a fair trial.

Claim III

■ Petitioner's third claim is that he was denied due process when the prosecutor asserted, in opening arguments, that experts know that letters like the one in this case are usually sent by family members, and when the prosecutor later elicited testimony from Mrs. Karaba that Mrs. King thought Mr. King was responsible for the phone calls. Again, Mr. King frames this as a constitutional issue of prosecutorial misconduct. The Michigan Court of Appeals rejected this claim, finding that the prosecutor's statement in opening arguments was made in good faith, and that the isolated reference to expert testimony regarding the letter's origin did not deny Mr. King a fair trial. The testimony of the proposed expert witness was offered by the prosecutor but was ruled inadmissible by the trial judge on the basis that the expert's opinion, although perhaps sufficient to establish probable cause, was not shown to be sufficiently reliable to present to the jury on the issue of guilt. As to the testimony of Karaba, the court held that it was not grounds for mistrial because it was simply relating an offhand comment by Mrs. King that she initially thought Mr. King was playing a sick joke. The witness's statement that the two of them laughed about it showed that Mrs. King did not ascribe any validity to the thought. Hence, the statement did not deny Mr. King his right to a fair trial.

We agree with the Michigan Court of Appeals. It is not uncommon for a prosecutor in opening arguments to allude to evidence he intends to present at trial, but which is never presented because of a ruling by the court. King cites no case in which such an occurrence has been held to deny a defendant his right to a fair trial. If anything, it may be interpreted by the jury as a weakness in the prosecutor's case. The record supports the Michigan court's finding that the prosecutor's reference to an expert was made in good faith, and that he was prepared to offer such expert testimony. Even if the prosecutor's reference to the expert was made in bad faith, it did not so infect the trial with unfairness as to result in the denial of due process. Similarly, any misconduct by the

prosecutor in intentionally eliciting Karaba's testimony did not deprive Mr. King due process.

### III.

For the foregoing reasons, we affirm the judgment of the district court.