**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 16a0668n.06**

**No. 15-2182**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 14, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TERRY FARR, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| VILLAGE OF NEW HAVEN, et al., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | OPINION |
| | ) | |
| | ) | |

**BEFORE:** **BATCHELDER, STRANCH, and DONALD, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge**  Following the execution of a search warrant and his arrest, Plaintiff-Appellant Terry Farr sued Defendant-Appellee Dale LaBombard and others, alleging a variety of claims including excessive force under the Fourth Amendment.  Farr's excessive force claim against LaBombard proceeded to trial, where the jury found in favor of LaBombard.  Farr appeals, arguing that the district court should have ordered a new trial based on the misconduct of LaBombard's counsel.  For the reasons set forth below, we **AFFIRM**.

**I. BACKGROUND**

LaBombard learned from a confidential source that Farr was selling cocaine from his home, and used a confidential informant to purchase cocaine from Farr twice before applying for a search warrant.  On the morning of June 9, 2010, LaBombard and six agents from the Drug Enforcement Agency executed the search warrant at Farr's home.  Farr and LaBombard present

different versions of what occurred that morning. According to Farr, LaBombard and another agent were the first to enter Farr's room and LaBombard grabbed his wrist, dragged him onto the floor, and handcuffed him, yelling profanities and asking Farr where the drugs were. LaBombard grabbed Farr by his handcuffs and jerked him up; Farr believed his wrists may have been broken and asked multiple times for the cuffs to be loosened. LaBombard then led Farr outside and put him in a police vehicle for transport to the New Haven Police Department where he was interrogated. In LaBombard's version of events, Farr was already cuffed and lying on the floor when he entered the room. LaBombard did not recall Farr telling him that the handcuffs were too tight.

After the district court granted summary judgment for the defendants on several issues, the case went to trial only on the excessive force claim against LaBombard. Farr filed a pre-trial motion seeking to preclude certain evidence relating to Farr's prior arrests and incarceration, prior controlled drug buys between Farr and confidential informants, allegations that Farr sold drugs in the neighborhood, and disclosure of what the search warrant was for, among other pieces of evidence. The district court issued an order, ruling in part:

> Farr's criminal history, aside from the circumstances surrounding his June 2010 arrest, will not be admitted at trial unless Labombard can show that any of Farr's arrests and/or convictions are connected to a potential alternate cause for Farr's injuries.
> . . .
> Labombard is not precluded from introducing evidence of the circumstances surrounding Farr's June 2010 arrest and the associated search warrant.

(R. 93, PageID# 1370–71). The district court subsequently issued a supplemental order on the issue, adding that:

> Labombard is not precluded from introducing evidence of the circumstances surrounding Farr's June 2010 arrest and the associated search warrant. More specifically and pursuant to the supplemental argument of Plaintiff, Labombard may introduce evidence regarding the reason(s) the officers came to Farr's home

and ultimately arrested him; however, pursuant to Fed. R. Evid. 403, Labombard may not introduce evidence regarding the facts of the controlled drug buys that preceded the issuance of the search warrant.

(R. 95, PageID# 1375).

Farr then filed a motion for reconsideration, which the district court granted in part and denied in part in an oral ruling. At the hearing, the court clarified its previous ruling in regard to Farr's arrest and the search warrant:

> [T]he Court finds that testimony regarding the existence of the warrant, the fact that DEA agents were at Mr. Farr's residence to execute it, as well as plaintiff's stipulation that the officers had the right to come in and arrest him in his home, is admissible as relevant and not unduly prejudicial evidence to establish the context of the search. However, testimony and exhibits going into detail regarding the type of drugs and the investigation and the events preceding the execution of the search warrant are more unfairly prejudicial than probative, especially in light of the defense here and will not be admitted.

(R. 114, PageID# 1771–72).

The jury returned a verdict for LaBombard. Farr now argues that counsel for LaBombard repeatedly violated the district court's evidentiary ruling at trial, and that the court should have declared a mistrial.

## II. ANALYSIS

Farr argues that the counsel for LaBombard violated the district court's rulings on twelve occasions. Of those, Farr did not object at trial to the following statements by LaBombard's counsel:

- Counsel said in opening statement: "There was good cause for the warrant. The arrest was valid and was never changed. And you'll find out that Mr. Farr pled guilty to the charges that was found to the drugs in the search warrant." (R. 116, PageID# 1891). Counsel again mentioned that Farr pled guilty. (R. 116, PageID# 1894).

3

- Counsel mentioned the pre-search meeting, noted that LaBombard was a case agent, and said that the agents would look for the items listed in the search warrant. (R. 116, PageID# 1891).

- In cross examination of Agent Steven Bowler, counsel asked if there was a "raid plan" prepared for each search. (R. 116, PageID# 1920). During direct examination of LaBombard, counsel asked if he had a pre-search meeting. (R. 117, PageID# 2117).

- During cross examination of Agent John Walker, counsel asked if his primary job was working narcotics cases. (R. 116, PageID# 1932).

- During cross examination of Farr, counsel asked if he pled "guilty to delivery and manufacturing of cocaine less than 50 grams?" Farr responded that he did, but clarified that the plea was not to delivery. (R. 116, PageID# 2000).

- During direct examination of Agent Jillian Fitch, counsel asked about the significance of a metal pipe that Fitch found in Farr's home, and she replied that it was used to smoke drugs. (R. 117, PageID# 2044).

- During direct examination of LaBombard, counsel asked if he was aware that Farr pled guilty to delivery and manufacturing. (R. 117, PageID# 2133).

- In closing argument, counsel stated: "Now, you know what the uncontested facts are: Valid warrant, valid arrest, plead delivery and cocaine. But what we dispute here is to what happened during this arrest and execution of this search warrant." (R. 117, PageID# 2160–61).

Farr also points to two instances of alleged error where he did object at trial:

- During cross examination of Farr, counsel asked, "They dismissed a couple of counts for one and you pled guilty to manufacturing and delivery of crack/cocaine, correct?" In

4

objecting, Farr's counsel stated, "Place an objection, it was less than 50 grams." (R. 116, PageID# 2000).

- During direct examination of LaBombard, counsel asked what the interrogation interview consisted of. LaBombard responded that he, "[a]sked him if he had any more narcotics at his house, where it might be located. We also asked him about the previous sales that he did as when we had a confidential informant meet with him." Farr objected, and the objection was sustained. The district court stated: "I'll instruct the jury to disregard the immediately prior answer from Mr. LaBombard. Focusing here on the events of June 9th, 2010." (R. 117, PageID# 2128–29).

At the conclusion of LaBombard's examination, counsel for Farr stated at sidebar that he was moving for a mistrial and that he would make a separate motion outside of the jury. The parties proceeded to discuss recalling a witness, and did not discuss the motion, nor was there any ruling on the mistrial issue. Farr did not subsequently move for a mistrial.

## A.     Claimed misconduct to which Farr did not object

The parties do not dispute that Farr did not object to several alleged instances of misconduct at trial, but do dispute whether these objections were properly preserved by Farr's motion in limine. LaBombard argues that, in this situation, the motion in limine did not preserve evidentiary questions for appeal.

In *United States v. Kelly*, 204 F.3d 652, 655 (6th Cir. 2000), we found persuasive an unpublished opinion holding that a motion in limine does not preserve evidentiary questions for appeal:

> As a matter of policy, the objection requirement of Fed. R. Evid. 103 is intended to allow the trial court to fix errors in its decision to admit or exclude evidence on the spot, thus preventing errors that could easily be alleviated without recourse to the appellate courts. A pre-trial motion in limine is not as effective a means of

alerting the trial judge to evidentiary problems as a contemporaneous motion at trial. This proposition seems particularly true where, as here, the court did not even rule on the motion in limine. Thus, we find that a motion in limine, especially one that is not ruled upon, is insufficient to preserve an objection to the admission of evidence for appeal.

*Kelly*, 204 F.3d at 655 (quoting *Burger v. W. Ky. Navigation, Inc.*, No. 91-5221, 1992 WL 75219, at *3 (6th Cir. April 15, 1992)).

It is true, as Farr argues, that the district court in *Burger* did not issue a ruling on the motion in limine. 1992 WL 75219, at *3. However, in the context of expert witness testimony, we have found that "if the court's ruling is in any way qualified or conditional, the burden is on counsel to raise objection to preserve error," but distinguished that from a situation in which "the trial court has made an explicit and definitive ruling on the record of the evidentiary issues to be decided, and has not indicated that the ruling is conditioned upon any other circumstances or evidence." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).

Here the district court did rule on the motion in limine, but the two written orders and oral ruling do not appear to be explicit and definitive, nor do they cover all the issues that Farr raised. Several of the district court's findings, moreover, were conditional. We review these unpreserved issues for plain error. To establish plain error, Farr must show an error, that is plain, and that affects substantial rights. *United States v. Olano*, 507 U.S. 725, 731–32 (1993).

Not all of the evidentiary issues Farr raises are clear cut, or fall entirely within one of the court's rulings. While Farr argues that these errors created a bias against him, resulting in an unfavorable jury verdict, he has not explained in any detail why the alleged errors affected his substantial rights. *See id*. Without more, Farr has not shown error sufficient to warrant a new trial.

**B.      Claimed misconduct to which Farr did object**

Farr also points to two other occasions where he did object.  LaBombard argues first that Farr waived these issues by failing to move for a new trial under Federal Rule of Civil Procedure 59.  Farr did state that he was moving for a mistrial in a sidebar conference and said that he would "make a separate motion outside the jury."  It does not appear that he did so at the close of evidence or after trial.  Yet, it is not necessary to determine whether this argument is waived by Farr's failure to move for a mistrial; even if preserved, it is insufficient to justify a new trial.

Denial of a motion for a new trial is typically reviewed for an abuse of discretion.  *United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995).  "A new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by:  (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias."  *Balsley v. LFP, Inc.*, 691 F.3d 747, 761 (6th Cir. 2012) (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir. 1996)).  When a party seeks a new trial based on allegedly improper comments made by counsel, we will examine:

> the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself.

*Id*. (quoting *Mich. First Credit Union v. CUMIS Ins. Soc'y, Inc.*, 641 F.3d 240, 249 (6th Cir. 2011)).  This court may set aside the verdict only "if there is a reasonable probability that the verdict of the jury has been influenced by such conduct."  *Id*. (quoting *Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998)).

Farr argues that the "repeated and intentional references to drug use and convictions regarding drugs was unfairly prejudicial and created an obvious and significant bias . . . which

then resulted in a verdict against him." Both instances of alleged misconduct were cured at least in part when the district court sustained one objection and issued a curative instruction as a result of the other. These two incidents across a four-day trial are insufficient to show that the trial was unfair or that the jury reached a seriously erroneous result. Thus, the alleged misconduct does not warrant a new trial.

## III. CONCLUSION

For the reasons discussed above, we find that a new trial is not warranted and **AFFIRM** the jury's verdict.