**NOT RECOMMENDED FOR PUBLICATION**
File Name: 16a0218n.06

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ROBERT WAYNE FATHERA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SMYRNA POLICE DEPARTMENT, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Defendant, | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| and | ) | |
| | ) | |
| GARY SCHOON, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

> **FILED**
> Apr 21, 2016
> DEBORAH S. HUNT, Clerk

BEFORE: SUTTON and GRIFFIN, Circuit Judges; and OLIVER, District Judge.[*]

GRIFFIN, Circuit Judge.

In November 2009, plaintiff Robert Wayne Fathera led defendant Gary Schoon of the Smyrna Police Department on a high-speed chase through two Tennessee counties. While still serving time for the charges arising from that chase, Fathera sued Schoon for excessive force under 42 U.S.C. § 1983. The jury sided with Schoon, finding he did not use excessive force during Fathera's arrest. Fathera moved for a new trial, alleging that impermissible hearsay and

---

[*]The Honorable Solomon Oliver, Jr., Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

character evidence tainted his case. The district court denied the motion and Fathera appeals.

Finding no error, we affirm the district court's judgment.

I.

Fathera and Schoon stipulated to the following facts at the outset of trial:

> On November 9, 2009, plaintiff received a phone call from Darrell Lambert asking for a ride. Plaintiff knew that Lambert was planning to "sell some guy some pills." Plaintiff and . . . his girlfriend, Katie Black, left plaintiff's mother's house in Black's white Ford Mustang and picked up Lambert and his girlfriend at their house. They stopped at the Spur Station in Smyrna and bought a 12 pack of beer, of which plaintiff drank one to three beers.
>
> The group arrived at the Fate Sanders Marina in Smyrna, where Lambert was set to meet his customers. Lambert talked to his pill customers briefly before coming back to the car and ordering Black, who was driving, to leave. The customers started following the Mustang when the group left the marina, and both cars eventually stopped in a subdivision in Smyrna. As plaintiff was exiting the vehicle, Lambert bumped into the door and knocked him to the ground. Plaintiff got into the driver's seat, and he and Lambert began to drive away from the scene.
>
> Officer Schoon initially received information that the . . . suspects in the white Mustang were wanted for robbery.[1] Officer Schoon made contact with the white Mustang driven by plaintiff . . . . When Officer Schoon attempted to stop the vehicle, plaintiff fled. Officer Schoon [kept] his lights and sirens on throughout the entire pursuit.
>
> Plaintiff led Officer Schoon on a 13-minute pursuit. . . . The pursuit occurred as depicted on the dashboard camera video from Officer Schoon's vehicle.
>
> On the ramp to enter I-24, plaintiff's Mustang sideswiped another motorist, which broke the mirrors off both vehicles. The pursuit occurred during rush-hour traffic.
>
> Plaintiff made a quick exit off I-24 . . . cutting across several lanes of traffic. . . . Plaintiff continued to flee [until reaching] the parking lot of a rock quarry. Officer Schoon stopped on the small bridge that led into the area.

(Footnote added.) The parties dispute what happened when defendant moved in to arrest plaintiff.

---

[1]Lambert's customers evidently reported the robbery after Lambert took their money without providing any drugs.

Fathera testified that Schoon approached "with his gun out," "screaming" to "get the fuck on the ground." Fathera said he complied, lying flat "on [his] stomach." Schoon "jumped on [Fathera's] back," handcuffed him, and began striking his face, hitting both sides as Fathera "turn[ed] [his] head back and forth." Fathera sustained facial fractures and required stiches over his right eye.

Schoon testified that he yelled and drew his weapon because he knew Fathera and Lambert had been involved in a robbery, could be armed, and were evidently willing to flee from police. He denied that plaintiff immediately complied with his orders. Instead, Schoon said Fathera initially walked away from the Mustang, then "crouch[ed]" down in a "modified push-up position." Schoon kneeled on Fathera's back to force him flat on the ground. But Fathera "started pushing back up again." To subdue Fathera, Schoon "applied a brachial stun to his neck," a technique he learned in police training to temporarily disable a suspect. Per Department policy, Schoon documented the encounter in a use-of-force incident report and in Fathera's arrest report. He denied intentionally striking Fathera and claimed he used only the force necessary to effectuate arrest.

Smyrna authorities charged plaintiff with "aggravated assault, driving on a . . . revoked license, . . . leaving the scene of an accident, reckless endangerment, driving while intoxicated, violation of the implied consent law, and evading arrest." Plaintiff pled guilty to driving while intoxicated (among other charges), but said he did so in order to receive a lesser sentence and maintained he was not drunk or intoxicated at the time of his arrest.

Plaintiff called Lambert as a supporting witness, while defendant presented Officer George Gant and Sergeant Robert Allen of the Metropolitan Nashville Police Department. Gant was one of several "Metro" officers who responded to Smyrna's request for back-up and helped

Schoon take Fathera and Lambert into custody. Allen was defendant's expert witness. He opined that "Officer Schoon used an appropriate, justifiable, and reasonable amount of force in his contact with Mr. Fathera." Ultimately, the jury found defendant's proofs more persuasive and concluded that Schoon did not use excessive force in arresting Fathera.

Plaintiff moved for a new trial following the verdict. He argued that: (1) the verdict was against the clear weight of the evidence; (2) Gant and Allen offered improper hearsay testimony; and (3) the wrongful admission of character evidence resulted in a prejudicial verdict. The district court denied the motion. Plaintiff urges us to reverse its decision, reasserting only his hearsay and character evidence claims on appeal.

## II.

"Under Federal Rule of Civil Procedure 59, a new trial is required when the original 'trial was unfair to the moving party in some fashion.'" *Mich. First Credit Union v. CUMIS Ins. Soc'y, Inc.*, 641 F.3d 240, 248 (6th Cir. 2011) (quoting *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 405 (6th Cir. 2006)) (brackets omitted). We review the denial of a motion for a new trial for abuse of discretion. *Id.* at 245. An abuse of discretion occurs when the reviewing court is left with "a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* "If the verdict is supported by some competent, credible evidence," the trial court does not abuse its discretion in denying the motion. *Id.* at 246 (alteration omitted).

Fathera contends his trial was unfair due to the district court's erroneous admission of hearsay and character evidence. Securing a new trial, however, requires more than proof of a mistake in the admission of testimony. "A motion for a new trial will not be granted unless the moving party suffered prejudice." *Barnes v. City of Cincinnati*, 401 F.3d 729, 743 (6th Cir. 2005). Thus, we can vacate the jury's verdict only if Fathera establishes that "the testimony's

admission amounted to more than harmless error." *Field v. Trigg Cty. Hosp., Inc.*, 386 F.3d 729, 736 (6th Cir. 2004). Evidentiary error is harmless "unless it is more probable than not that the error materially affected the verdict." *Barnes*, 401 F.3d at 742.

A.

Fathera first challenges the district court's ruling on his hearsay objections to Gant's and Allen's testimonies. We review the district court's evidentiary rulings for abuse of discretion, *Nolan v. Memphis City Sch.*, 589 F.3d 257, 264 (6th Cir. 2009), but "review de novo a district court's conclusions of law, such as in this case, whether evidence offered at trial constituted hearsay within the meaning of the Federal Rules of Evidence," *Field*, 386 F.3d at 735.

Plaintiff's hearsay complaint focuses on Gant's and Allen's responses to defense counsel's inquiries regarding whether any Metro officers reported Schoon for excessive force. Sergeant Allen testified that the Metro Department maintains "a policy that says that you must report misconduct. And that means anything, from an officer stealing a candy bar in a store to an officer using excessive force on a subject." In addition to reporting excessive force, Metro officers are expected "to go stop it" and intervene when they witness wrongdoing. Defense counsel asked Sergeant Allen whether any Metro officer felt moved to intervene during plaintiff's arrest:

> Q. . . . In your view of any of the information in this case, did you come across any evidence, any indication at all, that any Metro officer went over to Officer Schoon to intervene, to get him off of Mr. Fathera?
>
> A. No.

Plaintiff's counsel objected, asserting that the question "just blatantly call[ed] for hearsay, and . . . also seem[ed] beyond the scope of" Allen's expertise. The district court overruled the objection: "I don't believe that calls for a hearsay answer." Responding to defense counsel's

follow-up question, Allen explained that if the officers had witnessed an assault, it would have

been reflected in the appropriate "paperwork":

> Q.  . . .  You—you didn't see any indication that a Metro officer had to come on the scene and basically pull him off Mr. Fathera?
>
> A.  No.  And to go that one step further, if they had have seen that, those two Metro officers arriving on the scene of Mr. Fathera getting arrested would have seen that, they would have to contact their supervisor, they would have had to have done a report, and it would be on all these pieces of paperwork that we have here.

Although Fathera argues that Sergeant Allen's reference to "paperwork" and "report[s]" exposes

the hearsay character of his testimony, he did not renew his objection on this or any other basis at

trial.  *See Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749–50 (6th Cir. 2005) (to preserve an

evidentiary argument for appeal a party must "at a minimum alert the district court to the issue

that it is called upon to decide").  Nevertheless, assuming that plaintiff preserved this issue, his

argument fails on the merits.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.

Fed. R. Evid. 801(c).  Allen's testimony that he found no evidence of a Metro officer intervening

to prevent Schoon's alleged assault on Fathera is not hearsay because it does not concern an out-

of-court "statement."

Non-verbal conduct constitutes a "statement" for hearsay purposes only if the declarant

intends it as an assertion.  *See* Fed. R. Evid. 801(a).  Plaintiff cites no evidence suggesting that

the Metro officers intended to convey an assertion when they declined to file an excessive force

report against Schoon.  This was the very reason Allen concluded Schoon did not assault

Fathera; his opinion was founded not upon statements, but upon the absence of statements—the

fact that "there's no paper trail of any assault."  Fathera concedes, moreover, that an officer may

have multiple reasons not to report excessive force, making the conduct too vague to function as a definitive non-verbal assertion: "In reality, it is simply not true that police *have* to report an assault. Potentially, the police could be willing to cover up wrongdoing. Or they might simply be too far [away] to see anything relevant. Or they might plausibly *claim* not to have seen anything relevant." Still another possibility is the one Sergeant Allen deduced: the officers did not report an assault because it did not occur. The district court did not abuse its discretion in admitting this non-hearsay evidence.

The same goes for Fathera's challenge to Gant's testimony. Gant arrived at the rock quarry just as Schoon exited his vehicle and ran toward plaintiff. Gant went in the opposite direction in pursuit of Lambert. When he apprehended Lambert, Gant was facing away from Fathera and Schoon and did not witness or overhear their interaction. Additional Metro officers reported to the scene seconds after Schoon and Gant secured Fathera and Lambert. Plaintiff contends the district court improperly admitted Gant's response to defense counsel's question regarding the other officers' statements:

> Q. . . . Do you remember talking to any Metro officers on the scene after both men were in custody about anything related to what Officer Schoon did to or with Mr. Fathera?
>
> [Plaintiff's counsel]: Your Honor, I object to the hearsay, I think.
>
> [Defense Counsel]: I'm not asking; I'm just—
>
> The Court: I don't believe that calls for a hearsay response. I'll overrule the objection.
>
> A: I don't remember having any conversations regarding that matter.

Here, too, Fathera points to a second instance of "hearsay" in Gant's answer to a follow-up question, when Gant stated he was "not aware" of any Metro officers "talk[ing] about or ma[king] any reports" of Schoon's alleged excessive force. But here, too, Fathera is mistaken.

Plaintiff argues "it was perfectly clear that the officers at the scene would have been making verbal statements of some type." "As such," he reasons, Gant's "testimony about an absence of accusations was hearsay." This is incorrect. Plaintiff again sets forth no evidence demonstrating the Metro officers intended their silence to be an assertion. *See, e.g.*, *United States v. Peyton*, 183 F. App'x 539, 546 (6th Cir. 2006) ("Agent Behar testified that he did not suggest to Williams how many piercings Peyton had. . . . Agent Behar did not intend his silence as to Peyton's piercings as an assertion."). Gant's testimony did not disclose an out-of-court "statement." *See* Fed. R. Evid. 801(a). "The testimony, then, was not hearsay." *Peyton*, 183 F. App'x at 546.

Because "the purported errors identified by [Fathera] do not constitute error in the first instance," Fathera cannot establish that he suffered the prejudice necessary to justify vacating the jury's verdict. *Mich. First Credit Union*, 641 F.3d at 251. Plaintiff is not entitled to a new trial on hearsay grounds, and the district court did not abuse its discretion in denying him one.

B.

Plaintiff next takes issue with the district court's admission of character evidence—the bulk of which he did not object to at trial. We review Fathera's unpreserved evidentiary claims for plain error. Fed. R. Evid. 103(e). To establish plain error, plaintiff must show: "(1) error, (2) that is plain, and (3) that affects substantial rights." *Johnson v. United States*, 520 U.S. 461, 466–67 (1997) (internal quotation marks and brackets omitted). When all three conditions are met, we may exercise our discretion to review the error, "but only if (4) the error seriously

affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 467 (citation and brackets omitted). Beyond this, and even where plaintiff preserved his objections, the requisite showing to set aside the verdict in favor of a new trial still applies; plaintiff must demonstrate "it is more probable than not" that wrongful admission of character evidence "materially affected the verdict." *Barnes*, 401 F.3d at 742; *see also Nolan*, 589 F.3d at 264–65 ("a new trial is not warranted if the abuse of discretion [in an evidentiary ruling] constitute[s] harmless error").

"Losers in a trial can go hunting for relief on appeal with a rifle or a shotgun. The rifle is better." *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 955 (7th Cir. 1996). Fathera elects the shotgun. He raises seven claims of error, all revolving around the broader argument that inadmissible character evidence depicted Schoon as a "[h]ero, and [s]aint" to the jury, while portraying him as a "[d]espicable [l]owlife." Specifically, Fathera asserts the district court wrongly admitted evidence of: (1) his criminal history; (2) his intoxication at the time of arrest; and (3) Schoon's positive character. Plaintiff also faults the court for allowing defense counsel to: (4) suggest in opening argument that Fathera stole the Mustang used in the police chase; (5) question Fathera regarding his failure to pay for the damage he caused to the van he sideswiped; (6) question Fathera and Lambert about Fathera's decision to take his girlfriend's daughter along with him for Lambert's drug sale; and (7) ask Lambert whether he made any "racial type of comments" while inside the police vehicle following his arrest. None of these claims hits the target.

1.

Plaintiff first disputes defendant's references to his "criminal history generally," without regard to the limits on evidence of prior felony convictions under Federal Rule of Evidence 609.

Yet plaintiff laid himself bare to this attack by introducing his prior convictions. "[W]hen a party opens up a subject, there can be no objection if the opposing party introduces evidence on the same subject." *Francis v. Clark Equip. Co.*, 993 F.2d 545, 550 (6th Cir. 1993). "A party can . . . open the door to . . . evidence through statements made during his or her oral argument." *Helfrich v. Lakeside Park Police Dep't*, 497 F. App'x 500, 509 (6th Cir. 2012) (internal quotation marks omitted). Fathera's counsel did just that in his opening statement, at times venturing into greater detail than necessary:

> I will admit to you, Mr. Fathera's criminal history is abysmal. He is not any kind of saint. That will be proven. And, frankly, you know, about the worst felony that he's got on his record, just to let you in on a preview, is, he's got an attempted murder [sic] from about 16 years back when he was younger. Mr. Fathera isn't a saint. . . .

Plaintiff's counsel was also forthright about the fact that Fathera's arrest was the result of a drug deal gone wrong and allowed Fathera to appear before the jury in "prison garb." Although Fathera preserved this claim (at least in part) by objecting to defense counsel's question about his status as a "career" criminal under Tennessee law, the district court correctly found Fathera had "open[ed] the door" to the issue. In light of his strategic decision, plaintiff cannot complain on appeal. Admission of this evidence was not an abuse of discretion.[2]

The same goes for defense counsel's "argumentative" questions relating to Fathera's clipping of a van while attempting to evade Schoon. Plaintiff stipulated to inform the jury that his "Mustang sideswiped another motorist, which broke the mirrors off both vehicles," leading to criminal charges including "driving on a revoked . . . license, . . . leaving the scene of an

---

[2]Insofar as plaintiff asserts he filed a motion in *limine* to prevent disclosure of his prior conviction for resisting arrest, it is not clear that the district court granted his motion. In any event, it was Fathera—not defense counsel—who volunteered testimony concerning this particular conviction.

accident, reckless endangerment, [and] driving while intoxicated." By this stipulation, plaintiff opened himself to cross-examination regarding the accident. *Francis*, 993 F.2d at 550.

2.

Fathera also argues the district court erred in admitting evidence of the parties' prior conduct. *See* Fed. R. Evid. 404(b)(1) (prohibiting the admission of "[e]vidence of a crime, wrong, or other act" to show propensity). His complaint here is two-fold: Fathera disputes defendant's introduction of jail medical records revealing his intoxication at the time of arrest; as well as Schoon's "Officer of the Year" award, which Schoon received after rescuing a drowning civilian. Plaintiff, however, waived his right to challenge both items.

"Waiver is the intentional relinquishment or abandonment of a known right" achieved by act or omission. *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 905 & n.6 (6th Cir. 2006) (brackets and citation omitted). Fathera did not affirmatively oppose mention of or testimony regarding Schoon's award and, when prompted by the district court, expressly denied any objection to its admission, thereby "intentional[ly] relinquish[ing]" his right to challenge that decision on appeal. Fathera waived his objection to the introduction of jail medical records— stating that he "[s]mell[ed] strongly of alcohol," "respond[ed] slowly to verbal stimuli," spoke with "slurred" speech, and tested positive for benzodiazepine, marijuana, and opiates at the time of his arrest—in much the same manner. Having abandoned his right to challenge this evidence in the trial court, plaintiff cannot now claim error based on its admission. *See CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 587 (6th Cir. 2015).

Waiver similarly forecloses plaintiff's remaining claims, though for different reasons. Fathera does not identify which Rule(s) of Evidence the district court violated in permitting defense counsel's questions regarding the involvement of his girlfriend's daughter, Lambert's

"racial type of comments," or counsel's suggestion that Fathera stole the Mustang. Nor does he explain how these unpreserved errors affected his substantial rights. Issues addressed in so perfunctory a manner "unaccompanied by some effort at developed argumentation, are deemed waived." *White Oak Prop. Dev., LLC v. Washington Twp.*, 606 F.3d 842, 850 (6th Cir. 2010) (quoting *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004)). Plaintiff again fails to show that the admission of character evidence was "error in the first instance" and cannot establish prejudice warranting a new trial. *Mich. First Credit Union*, 641 F.3d at 251.

Importantly, we would reach the same no-prejudice conclusion even if we agreed that the district court admitted improper character evidence, because plaintiff has not established the verdict was the probable result of that wrongly admitted evidence—as opposed to admissible evidence that was simply unfavorable to his case. In other words, plaintiff cannot demonstrate that improper evidence "materially affected the verdict," *Barnes*, 401 F.3d at 742, because the record is replete with other, proper evidence bringing his credibility and sobriety into question, including: his counsel's disclosures regarding his "abysmal" criminal history; his stipulation to drinking "one to three beers" before the police chase; his admitted history of drug and alcohol abuse; his testimony suggesting that he was serving a prison sentence for an unrelated driving under the influence conviction at the time of trial; Gant's testimony that police found "a lot of empty beer cans [and] a bottle of some kind of liquor" inside the Mustang; and Lambert's acknowledgment that he was "pretty much intoxicated" during the incident.[3] Indeed, "[p]laintiff's own testimony"—that he pled guilty to driving while intoxicated in hopes of a

---

[3]Although called as a supporting witness, Lambert—a felon with a prior forgery conviction—contradicted plaintiff's claims. Whereas Fathera identified Schoon as the lone assailant, Lambert claimed "six or seven" officers participated in the attack. He also disclosed other explanations for plaintiff's injuries, stating that the intended pill buyer attempted to run Fathera over with his car.

lesser sentence—"show[ed] that he was willing to lie in order to receive a more favorable judgment." The district court instructed the jury to consider only the admissible evidence in rendering a verdict and not to be "swayed by sympathy, bias, prejudice, or favor as to any party." We presume it followed that instruction. *See CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009).

"[I]n close cases[,] the improper admission of prejudicial evidence is all the more damaging," and may make the difference at trial. *Field*, 386 F.3d at 736. This is not one of those cases. Because the record includes "some competent, credible evidence" to support the verdict, the district court did not abuse its discretion in denying plaintiff a new trial. *Mich. First Credit Union*, 641 F.3d at 246.

## III.

We affirm the judgment of the district court.